MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:    2016 ME 85
Docket:      BCD-15-404
Argued:      April 5, 2016
Decided:     June 7, 2016

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

PATRICIA GRANT et al.

v.

FOSTER WHEELER, LLC, et al.

ALEXANDER, J.

[¶1]  Patricia Grant and the Estate of Edward Grant (the Estate) appeal from summary judgments entered against them in the Business and Consumer Docket (*Murphy, J.*) on their complaint for negligence; failure to warn of defective, unreasonably dangerous goods; and loss of consortium.  The judgments were entered upon the motions of New England Insulation Company (NEI); Foster Wheeler, LLC; Warren Pumps, LLC; and Imo Industries, Inc.  Because the Estate was unable to produce evidence to establish a prima facie case that any of the named defendants' products were a proximate cause of the injuries, we affirm the summary judgments.

## I. CASE HISTORY

[¶2]  Viewing the summary judgment records in the light most favorable to the Estate, the following facts are undisputed for purposes of summary judgment. *See Remmes v. Mark Travel Corp.*, 2015 ME 63, ¶ 18, 116 A.3d 466 (stating the rule that on review of entry of a summary judgment, the record is considered in the light most favorable to the nonprevailing party).

[¶3]  Edward Grant worked for Bath Iron Works from August 19, 1964, to June 9, 1970, and again from August 24, 1978, to February 1, 1994.  During Grant's first period of employment, asbestos was a common component of the insulation and other materials used at Bath Iron Works, including use in the construction and renovation of ships.

[¶4]  In the course of his employment, Grant worked in a variety of positions, including as a ship cleaner.  Cleaning included sweeping up debris—sometimes including asbestos—that resulted from construction and maintenance activities.  Grant worked as a ship cleaner from February 1966 to January 1967 and again from January 1969 to June 1970.

[¶5]  Before his death, Grant testified at a deposition that he believed that he was exposed to asbestos as a cleaner between 1966 and 1967, during which time he recalled sweeping up asbestos resulting from pipe covering work.  Grant testified that he was unsure if he was exposed to asbestos at other times.

[¶6] NEI sold Bath Iron Works insulation manufactured by Owens-Corning Fiberglas Corporation[1] called "Kaylo pipe covering," which contained asbestos fibers and was used to insulate ships' pipes. Foster Wheeler manufactured boilers and air ejectors. Warren Pumps manufactured pumps. Imo Industries is the successor to DeLaval, which manufactured pumps and turbines.

[¶7] In April 2011, Grant died of lung cancer. His cancer was caused by exposure to asbestos.

[¶8] The complaint, later amended, was filed in the Superior Court (Sagadahoc County) in March 2012, alleging negligence, violation of 14 M.R.S. § 221 (2015) (defective or unreasonably dangerous goods),[2] and loss of consortium. The amended complaint named fifteen defendants, including NEI,

---

[1] Owens-Corning Fiberglas Corporation declared bankruptcy as a result of asbestos-related litigation, and it was not named as a defendant in this action. A trust was established to compensate persons exposed to and injured by Owens-Corning products, and Patricia Grant made a claim for compensation from that trust.

[2] Title 14 M.R.S. § 221 (2015) states, in full:

One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section applies although the seller has exercised all possible care in the preparation and sale of his product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.

4

Foster Wheeler, Warren Pumps, and Imo Industries.[3]  The case was transferred to the Business and Consumer Docket in January 2013.  *See* M.R. Civ. P. 131.

[¶9]  In July 2014, NEI, Foster Wheeler, Warren Pumps, and Imo Industries filed separate motions for summary judgment supported by statements of material fact.  *See* M.R. Civ. P. 7(b), 56(b), (h)(1).  The Estate opposed each motion, responded to the statements of material fact, and offered additional statements of material fact.  *See* M.R. Civ. P. 7(c), 56(c), (h)(2).  Each defendant replied.  *See* M.R. Civ. P. 7(e), 56(h)(3).  Four sizeable summary judgment records were generated.  The parties dispute whether the plaintiffs had established a prima facie case that Grant ever breathed asbestos from the defendants' products.[4]

[¶10]  The court entered summary judgment in favor of NEI, Warren Pumps, Foster Wheeler, and Imo Industries on each of the Estate's claims.  Upon motions

---

[3]  Seven defendants were individually dismissed from the action between 2012 and 2015.  Each dismissal was uncontested or with the Estate's consent, and two were on the Estate's motion.  Not subject to individual dismissals were NEI, Foster Wheeler, Warren Pumps, Imo Industries, Air & Liquid Systems Corp., Aurora Pump Company, Bayer Cropscience Inc., and Rapid-American Corp.  Air & Liquid Systems Corp., Aurora Pump Company, Bayer Cropscience, and Rapid-American have not participated in this appeal.

[4]  NEI also argued that its duty to warn Edward Grant of any danger present in Kaylo was relieved by the sophisticated user doctrine, an affirmative defense not yet recognized in Maine.  *See Townsend v. Chute Chem. Co.*, 1997 ME 46, ¶ 11 n.4, 691 A.2d 199 (declining to reach the issue).  NEI argued that Bath Iron Works was the end user of Kaylo and that Bath Iron Works was a sophisticated user of asbestos products.  *See Taylor v. Am. Chemistry Council*, 576 F.3d 16, 24-31 (1st Cir. 2009) (applying Massachusetts law).  Although the trial court granted summary judgment to NEI on this ground and others, we need not reach this issue today, as we conclude that summary judgment in favor of NEI was appropriate on other grounds.

by those four defendants, the court entered a final judgment in the matter pursuant to M.R. Civ. P. 54. The Estate timely appealed.

## II. LEGAL STANDARDS FOR REVIEW

[¶11] The Estate argues that the court erred when it entered summary judgments in favor of NEI, Foster Wheeler, Warren Pumps, and Imo Industries.

[¶12] "We review the grant of a motion for summary judgment de novo, and consider both the evidence and any reasonable inferences that the evidence produces in the light most favorable to the party against whom the summary judgment has been granted in order to determine if there is a genuine issue of material fact." *Budge v. Town of Millinocket*, 2012 ME 122, ¶ 12, 55 A.3d 484. "A fact is material if it has the potential to affect the outcome of the suit, and a genuine issue of material fact exists when a fact-finder must choose between competing versions of the truth, even if one party's version appears more credible or persuasive." *Angell v. Hallee*, 2014 ME 72, ¶ 17, 92 A.3d 1154. However, "when the matter remains one of pure speculation or conjecture, or even if the probabilities are evenly balanced, a defendant is entitled to a judgment." *Crowe v. Shaw*, 2000 ME 136, ¶ 10, 755 A.2d 509.

[¶13] "When the moving party is the defendant, the burden rests on that party to show that the evidence fails to establish a prima facie case for each element of the cause of action." *Budge*, 2012 ME 122, ¶ 12, 55 A.3d 484. "When

6

the material facts are not in dispute, we review de novo the trial court's interpretation and application of the relevant statutes and legal concepts." *Remmes*, 2015 ME 63, ¶ 19, 116 A.3d 466.

[¶14] A claim for negligence and a claim for violation of section 221 both require proof of causation.[5] "A prima facie case of negligence requires a plaintiff to establish . . . an injury to the plaintiff that is proximately caused by a breach of [a] duty" owed to the plaintiff by the defendant. *Mastriano v. Blyer*, 2001 ME 134, ¶ 11, 779 A.2d 951 (citation omitted).

[¶15] "Evidence is sufficient to support a finding of proximate cause if the evidence and inferences that may reasonably be drawn from the evidence indicate that the negligence played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the negligence." *Crowe*, 2000 ME 136, ¶ 10, 755 A.2d 509. "The mere possibility of such causation is not enough, and when the matter remains one of pure speculation or conjecture, or even if the probabilities are evenly balanced, a defendant is entitled to a judgment." *Id.*

---

[5] Without proof of causation on the negligence and section 221 claims, Patricia Grant's loss of consortium claim is also foreclosed. Although the loss of consortium claim is an independent, statutorily created action ultimately aimed at compensating a person's injuries that resulted from his or her spouse's injury, Patricia Grant's claim necessarily arises from tortious conduct committed against Edward Grant. *See Steele v. Botticello*, 2011 ME 72, ¶ 17, 21 A.3d 1023; *Macomber v. Dillman*, 505 A.2d 810, 813 (Me. 1986). Thus, without proof that any of the defendants caused Edward Grant's injury, Patricia Grant cannot recover for loss of consortium.

[¶16]  To establish a prima facie case in personal injury asbestos litigation, a plaintiff must demonstrate both product nexus, meaning that the plaintiff was exposed to the defendant's asbestos-containing product, and medical causation, meaning that such exposure was a substantial factor in causing the plaintiff's injury.  *See, e.g., Rutherford v. Owens-Illinois, Inc.*, 941 P.2d 1203, 1206-07 (Cal. 1997).

[¶17]  Jurisdictions differ as to what amount of product exposure a plaintiff's evidence must demonstrate to survive summary judgment.  *Compare, e.g., Welch v. Keene Corp.*, 575 N.E.2d 766, 769 (Mass. App. Ct. 1991) ("It is enough, however, to reach the jury that [the plaintiff] show that he worked with, or in close proximity to, the defendants' asbestos products."), *with, e.g., Henderson v. Allied Signal, Inc.*, 644 S.E.2d 724, 727 (S.C. 2007) (expressly adopting the "frequency, regularity, and proximity test" announced in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986)).

[¶18]  In *Lohrmann*, an asbestos personal injury case, the United States Court of Appeals for the Fourth Circuit held: "To support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked."  782 F.2d at 1162-63.

8

[¶19]   In the present case, referencing prior trial court opinions, the trial court applied a test that is less burdensome to a plaintiff.  In order to demonstrate product nexus, the trial court required the plaintiff to show "[t]hat the defendant's asbestos-containing product was *at the site where the plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used*."  (Emphasis in original) (quoting *Mahar v. Sullivan & Merritt, Inc.*, No. BCD-CV-10-21, 2012 Me. Super. LEXIS 129, at *9 (July 31, 2012)).  The court required the plaintiff to "prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product."  (Quoting *Mahar*, 2012 Me. Super. LEXIS 129, at *9).

[¶20]   Because we conclude that the Estate has not offered evidence to satisfy even the less burdensome standard applied by the trial court, we need not decide whether Maine should utilize the greater *Lohrmann* standard.  Utilizing the less burdensome standard applied by the trial court, we turn to the Estate's evidence regarding the individual defendants.

III.  APPLICATION OF LEGAL STANDARDS TO THE FACTS

A.   New England Insulation

[¶21]   Edward Grant worked as a cleaner from February 1966 to January 1967 and again from January 1969 to June 1970.  Bath Iron Works began using Kaylo pipe covering sometime in 1967 and discontinued its use after 1973.

The Estate has produced evidence that NEI sold Kaylo pipe covering to Bath Iron Works on three instances in 1969. There is no evidence that NEI sold Kaylo to Bath Iron Works during the first timeframe when Grant worked as a cleaner. It is only during the second timeframe—January 1969 to June 1970—that Grant might have been exposed to asbestos from Kaylo sold by NEI. Therefore, we examine what admissible evidence the Estate has offered to show that Grant swept up asbestos debris and might have inhaled asbestos fibers after pipe coverers had installed Kaylo between January 1969 and June 1970.

[¶22] Before his death, Grant was deposed for his workers' compensation claim pursuant to the Longshore and Harbor Workers' Compensation Act, *see* 33 U.S.C.S. §§ 901-950 (LEXIS through PL 114-152).[6] There, Grant testified that when he worked as a cleaner from January 1969 to June 1970, he did "mostly all painting." He testified that his only memory of cleaning up asbestos debris was when he first worked as a cleaner, from February 1966 to January 1967. He stated that when he did do "cleaning" in 1969-1970, "it seemed different" than the cleaning he had done before, and he did not recall working near pipe coverers.

---

[6] Enacted in 1927, the Longshore and Harbor Workers' Compensation Act has been amended since Grant filed his claim pursuant to it. *See* Pub. L. No. 69-803, 44 Stat. 1424 (1927); *see, e.g.*, Pub. L. No. 111-5, sec. 803, 123 Stat. 187 (2009) (codified at 33 U.S.C. § 902(3)(F)). Because neither the Act nor Grant's workers' compensation claim is relevant to this appeal, we cite the current iteration of the Act.

10

[¶23]  In support of its claim, the Estate offered the testimony of several witnesses who worked at Bath Iron Works in 1969 and 1970 to attempt to demonstrate that Grant's memory was wrong and that he swept up asbestos that might have come from Kaylo pipe covering in 1969 or 1970.

[¶24]  The first witness opined in reports and at deposition that Grant likely would have been directed to perform cleaning duties during January 1969 to June 1970 after insulation was installed by pipe coverers.  His opinion was based upon his knowledge that Bath Iron Works undertook conversion projects during that timeframe and that most of the people in Grant's department were needed to clean up after those projects.  The witness also testified, however, that most people either "generally" cleaned or "generally" painted, although there was some "cross-pollination."  The witness testified that he could not remember Grant personally, and he could not testify to seeing Grant working at any particular time.

[¶25]  The second witness worked in the same department as Grant, and he estimated that there were 600 people in that department.  The second witness testified that he had been exposed to asbestos from cleaning up pipe covering debris while working in that department, but he had no recollection of working alongside Grant or seeing Grant working near any particular equipment.  The second witness testified that their department's primary role was painting and cleaning.

[¶26]   A third witness testified that he had worked in Grant's department, and thought it was possible that he and Grant worked on the same crew.  He testified that cleaning up asbestos fibers and dust from pipe covering insulation was one of the "main things" their department did.  The third witness remembered seeing Grant sweeping a ship's passageway on one occasion sometime between 1966 and 1968, but he could not be more specific.  The time period referenced necessarily would have been during Grant's 1966-1967 period of employment as a cleaner, before NEI sold Kaylo to Bath Iron Works.

[¶27]   This constitutes all of the Estate's evidence that Grant's injury was caused by Kaylo.  This evidence is too speculative to support a prima facie showing that Grant encountered asbestos fibers from NEI-supplied Kaylo in 1969 or 1970.  None of the witnesses could place Grant in proximity to Kaylo during the 1969-1970 cleaning period from their own, personal knowledge of his work.  Given the size of the department, Grant's own testimony that he almost exclusively painted during 1969-1970, Grant's testimony that when he did clean it was different than his prior time in that department (when he remembered sweeping up asbestos), and the first witness's testimony acknowledging that most workers generally either painted or cleaned, the evidence is too speculative to allow a fact-finder to find that Grant swept up asbestos from NEI-supplied Kaylo.  Although proximate causation may be proved by circumstantial evidence, the evidence must

support inferences rather than mere speculation. The evidence regarding causation by NEI-supplied Kaylo does not rise above speculation. *See Crowe*, 2000 ME 136, ¶ 10, 755 A.2d 509.

B.     Foster Wheeler, Warren Pumps, and Imo Industries

[¶28]   It is undisputed that products—pumps, boilers, turbines, etc.— manufactured by Foster Wheeler, Warren Pumps, and Imo Industries were present on naval ships constructed or converted at Bath Iron Works during the period when Grant worked at Bath Iron Works. Therefore, we examine what evidence the Estate offered to demonstrate that these products contained asbestos originating with the defendants and that Grant had contact with that asbestos.

[¶29]   The first witness who had testified as to his general knowledge of cleaning activities in 1969-1970 also stated in a report that most equipment arrived at Bath Iron Works with gaskets and packing already installed, and averred in an affidavit that Foster Wheeler's, Warren Pumps', and Imo Industries' gaskets and packing contained asbestos. In addition, Bath Iron Works employees covered the products with asbestos, but that covering was not asbestos that originated with Foster Wheeler, Warren Pumps, or Imo Industries products.

[¶30]  Pursuant to 14 M.R.S. § 221, the seller of a product is liable for injury if the product "is expected to and does reach the user or consumer without significant change in the condition in which it is sold." For this reason, our

analysis is confined to the evidence regarding Grant's potential exposure only to the asbestos contained in the products' original gaskets and packing.

[¶31] The only evidence offered regarding Grant's potential contact with asbestos originating with the defendants' products was the first witness's statement that when ships were constructed or older naval ships were converted "some of the asbestos swept up [would] also come from gaskets and packing in the pumps and valves." That witness had opined that Grant likely would have cleaned up this asbestos, as a function of his job in the cleaning department. The witness testified at deposition that he could not be any more specific about a particular manufacturer's product releasing asbestos debris from its gaskets or packing. He also conceded that "the [manufacturers' original] gaskets and packing may have been changed out in a number of cases."

[¶32] The evidence the Estate offered to demonstrate product nexus as to Foster Wheeler, Warren Pumps, and Imo Industries does not specifically identify any of those manufacturers' products as a potential source of the asbestos to which Grant was exposed. As with the evidence regarding the Kaylo products, the evidence tying Grant's condition to these products does not rise above speculation and is not sufficient to create a prima facie case for causation or liability.[7]

---

[7] Similarly, any claim of a duty to warn on the part of any of the defendants would fail.

14

C.      Conclusion

[¶33]  Summary judgment was appropriate on each of Patricia Grant's and the Estate's three claims as to NEI, Foster Wheeler, Warren Pumps, and Imo Industries because the plaintiffs did not offer evidence that was more than speculation and that would permit a fact-finder to find that Edward Grant had inhaled asbestos from these particular defendants' products.

The entry is:

Judgment affirmed.

_____

**On the briefs:**

Kevin M. Noonan, Esq., McTeague Higbee, PA, Topsham, for appellants Patricia Grant and the Estate of Edward Grant

Kip Adams, Esq., and Christopher Tauro, Esq., Lewis Brisbois Bisgaard & Smith, LLP, Boston, Massachusetts, for appellee New England Insulation Company

Steven F. Wright, Esq., Wright & Associates, P.A., Portland, for appellees Foster Wheeler, LLC, and Imo Industries, Inc.

Steven F. Wright, Esq., Wright & Associates, P.A., Portland, and Laurie J. Hepler, Esq., Carroll Burdick & McDonough LLP, San Francisco, California, for appellee Warren Pumps, LLC

**At oral argument:**

Kevin M. Noonan, Esq., for appellants Patricia Grant and the Estate of Edward Grant

Kip Adams, Esq., for appellee New England Insulation Company

Steven F. Wright, Esq., for appellees Foster Wheeler, LLC, Warren Pumps, LLC, and Imo Industries, Inc.

Laurie J. Hepler, Esq., Greines, Martin, Stein & Richland LLP, San Francisco, California, for appellee Warren Pumps, LLC

Business and Consumer Docket docket number CV-2013-2
FOR CLERK REFERENCE ONLY