STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER COURT
DOCKET NO. BCD-CV-2015-079 ✓

SHARON RICKARDS, individually, )
and as personal representative of the )
Estate of BARRY RICKARDS, )
)
        Plaintiff, )
)
v. )
)
3M COMPANY, *et al.*, )
)
        Defendants. )

**COMBINED ORDER ON
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT**

This matter comes before the Court on Defendants ArvinMeritor, Inc. ("ArvinMeritor"),

N.H. Bragg and Sons, Inc. ("Bragg"), and Dana Companies, LLC's ("Dana") motions for summary

judgment.[1] M.R. Civ. P. 56. Plaintiff opposes the motion. The Court heard oral argument on the

three pending motions on March 28, 2018. Attorney Tony Sbarra, Esq. appeared for ArvinMeritor,

Attorney Steven Wright, Esq. appeared for Bragg, and Attorney Kyle Bjornlund, Esq. appeared

for Dana. Plaintiff was represented by Donald Blydenburgh, Esq.

## BACKGROUND

This lawsuit arises out of Barry Rickards' alleged exposure to asbestos, which was

allegedly a direct and proximate cause of his malignant mesothelioma. (Pl's Compl. ¶¶ 3, 6.) Mr.

Rickards passed away during the pendency of this lawsuit; his widow Sharon Rickards has been

substituted as Plaintiff in her capacity as the personal representative of Mr. Rickards' estate. Ms.

Rickards alleges that she too suffered damages as a result of Mr. Rickards' incapacitation and

death; she thus brings suit individually to recover for those damages. (Pl's Compl. ¶¶ 18-19.)

---

[1] Also pending is Plaintiff's recently filed motion for leave to addend Exhibit G to Plaintiff's opposition to Defendant ArvinMeritor's motion for summary judgment with authenticating affidavit ("motion to addend"), which was filed June 4, 2018. Defendant ArvinMeritor opposed the motion and Plaintiff timely replied. Pursuant to its discretionary authority, the Court rules on the motion to addend without hearing. M.R. Civ. P. 7(b)(7).

1

Mr. Rickards is alleged to have been exposed to asbestos for many years, beginning in approximately the mid-1970s. (Pl's Compl. ¶ 3.) At different periods of time, Mr. Rickards worked as an automobile, vehicle, heavy equipment, and machinery mechanic or around others who performed such work. (Pl's Compl. ¶ 3.) The Defendants who bring the instant motions were suppliers or manufacturers for some of Mr. Rickards' employers and, in the case of Dana, also supplied parts for Mr. Rickards' personal "shade tree" automotive work. (*See* Pl's Compl. ¶¶ 4, 5.) Some of these parts allegedly included asbestos-containing components. On the instant motion the Court is asked to determine whether there are genuine disputes of material fact regarding whether Mr. Rickards was exposed to these Defendants' products or whether that exposure could have been a proximate cause of his illness and death.

## STANDARD OF REVIEW

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy v. CityMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted). A genuine issue exists where the jury would be required to "choose between competing versions of the truth." *MP Assocs. v. Liberty*, 2001 ME 22, ¶ 12, 771 A.2d 1040. To survive a defendant's motion for summary judgment, the plaintiff must establish a prima facie case for every element of the plaintiff's cause of action. *See Savell*, 2016 ME 139, ¶ 18, 147 A.3d 1179.

## ANALYSIS

The Plaintiff's primary causes of action against all three Defendants are negligence and strict products liability. (Pl's Compl. ¶¶ 10-14, 16-17.) "Maine's strict liability statute, [14 M.R.S.

2

§ 221], imposes liability on manufacturers and suppliers who market defective, unreasonably dangerous products" and includes liability for defects based on the failure to warn of the product's dangers. *Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 537 (Me. 1986).

"The essential elements of a claim for negligence are duty, breach, proximate causation, and harm." *Baker v. Farrand*, 2011 ME 91, ¶ 11, 26 A.3d 806. To ultimately prevail, a plaintiff must demonstrate that "a violation of the duty to use the appropriate level of care toward another, is a *legal cause* of harm to" the plaintiff because the defendant's "conduct [was] a *substantial factor* in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1993) (quoting *Wing v. Morse*, 300 A.2d 491, 495-96 (Me. 1973)) (emphasis in original).

In *Mahar v. Sullivan & Merritt, Inc.*, BCD-CV-10-21, 2012 Me. Bus. & Consumer LEXIS 35, at *6-7 (Bus. & Consumer Ct. July 26, 2012), on a motion for summary judgment this Court endorsed and followed the standard adopted in *Campbell v. H.B. Smith Co.*, LINSC-CV-2004-57 (Me. Super. Ct., Lin. Cty., Apr. 2, 2007) (Gorman, J.). Under this standard, to establish a prima facie case for negligence in asbestos-exposure cases, a plaintiff must demonstrate:

> (1) medical causation—that the plaintiff's exposure to the defendant's product was a substantial factor in causing that plaintiff's injury and (2) product nexus—that the defendant's asbestos-containing product was at the site where plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used . . . a plaintiff must prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product.

*Id.* at 7 (quoting 63 Am. Jur. 2d *Products Liability* § 72). This Court thus held

> that in order to avoid summary judgment, in addition to producing evidence of medical causation, a plaintiff must establish the product nexus through competent evidence. In particular, a plaintiff must demonstrate (1) that the defendant's product

3

was at the [plaintiff's] work place, (2) that the defendant's product contained asbestos, and (3) that the plaintiff had personal contact with the asbestos from the defendant's product.

*Mahar*, 2012 Me. Bus. & Consumer LEXIS 35, at *8-9; *see also Rumery v. Garlock Sealing Techs.*, No. 05-CV-599, 2009 Me. Super. LEXIS 73, at *7-9, *8 n.4 (Apr. 24, 2009) (applying standard announced in *Campbell* and analyzing cases to determine that while plaintiff's burden on summary judgment is to demonstrate "personal contact," "whether the defendant's product was a 'substantial factor' in causing the plaintiff's damages is for the jury").

Although the *Mahar* standard has been consistently applied at the trial level since *Campbell* was decided in 2007, the Law Court has not yet had occasion to explicitly adopt or reject the standard. *See Grant v. Foster Wheeler, LLC*, 2016 ME 85, ¶ 20, 140 A.3d 1242. As the Court noted in *Grant*, "jurisdictions differ as to what amount of product exposure a plaintiff's evidence must demonstrate to survive summary judgment." *Id.* ¶ 17. *Cf. Henderson v. Allied Signal, Inc.*, 644 S.E.2d 724, 727 (S.C. 2007) (expressly adopting the "frequency, regularity, and proximity test" announced in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986)). In this case, all Defendants argue that Plaintiff has failed to carry her burden under the less-burdensome *Mahar* standard. *See Grant*, 2016 ME 85, ¶ 20, 140 A.3d 1242.

I.   ARVINMERITOR

A. Facts

Defendant ArvinMeritor is responsible for Rockwell-branded truck component parts. (Pl's Mot. Summ. J. 1 n.1.) Rockwell was one of several suppliers who supplied International-branded dump trucks with brake components, including asbestos-containing brake linings. (Def's Supp'g S.M.F. ¶¶ 24-25, 27; Pl's Add'l S.M.F. ¶ 34.) Mr. Rickards worked at the Boise Cascade Paper Mill (the "Paper Mill") in Rumford, Maine for two distinct periods. At the oral argument,

4

Plaintiff's counsel conceded that the only relevant time period here is from February 1982 to February 1983. During this time, the Paper Mill owned five to seven International dump trucks. (Def's Supp'g S.M.F. ¶ 9.) Mr. Rickards "assisted and observed" brake work done on these trucks, including the replacement of asbestos-containing brake linings, during this period of employment. (Def's Supp'g S.M.F. ¶¶ 5, 7, 10; Pl's Add'l S.M.F. ¶ 32.) The extent of Mr. Rickards' exposure during this period is uncertain because his job had him out of the garage much of the time. (Def's Supp'g S.M.F. ¶¶ 6-8.) Nonetheless, while ArvinMeritor disputes the *extent* of Mr. Rickards' exposure, it is undisputed that he was exposed to "brake dust" in the garage from the International trucks during his employment. (Pl's Add'l S.M.F. ¶ 32.)

The International trucks Mr. Rickards worked on had been at the Paper Mill "for a while" before Mr. Rickards began working at the garage, and he did not know the manufacturer of the brakes removed from these trucks. (Def's Supp'g S.M.F. ¶¶ 11, 13.) Mr. Rickards also did not know who manufactured the brakes installed in the International dump trucks he worked on, and never mentioned "Rockwell" during his testimony. (Pl's Supp'g S.M.F. ¶¶ 14-15.) Furthermore, Mr. Rickards did not know the brand name, trade name, or manufacturer of the brake parts installed on the vehicles in the Paper Mill garage, nor did he know what any of those brakes were made of. (Def's Supp'g S.M.F. ¶ 16.) Mr. Rickards testified that replacement parts used by mechanics in the Paper Mill garage were purchased from Morrison Motors, an International dealership in Mexico, Maine.[1] (Pl's Add'l S.M.F. ¶ 33.) The Rockwell Master Customer List, which reflects potential customers between the late 1960s and 1995, does not include the Paper Mill or Morrison Motors during or preceding Mr. Rickards' employment.[2] (Def's Supp'g S.M.F. ¶ 26.)

---

[1] Although ArvinMeritor "denies" Pl's Add'l S.M.F. ¶ 33, its denial is not directed at this assertion contained therein. (*See* Def's Opp'g S.M.F. ¶ 33.)

[2] As qualified by Plaintiff, this fact's probative value is severely undercut. (Pl's Opp'g S.M.F. ¶ 26; *see also* Pl's Add'l S.M.F. ¶ 39.) ArvinMeritor's corporate representative's own deposition testimony in prior litigation shows that

5

Mr. Rickards also testified that although some of the parts that he saw in the garage were branded "International," those parts were not brakes. (Def's Opp'g S.M.F. ¶ 33.) Notwithstanding Mr. Rickard's lack of personal knowledge of who manufactured the brakes installed on the International trucks, the dust of which he was indisputably exposed to, Plaintiff has proffered documentary evidence to establish that the brakes were manufactured by Rockwell. (Pl's Add'l S.M.F. ¶¶ 31, 34-40 *see* Pl's Exs. F, G.) ArvinMeritor denies that Rockwell brakes were ever installed on the International trucks at the Paper Mill and objects to much of Plaintiff's evidence on the grounds that the exhibits containing it are inadmissible hearsay and/or irrelevant. (Pl's Reply Mot. Summ. J. 1-2.)

### B. Analysis

As a threshold matter, Plaintiff has met her burden of showing that Mr. Rickards had personal contact with asbestos during his work at the Paper Mill. *See Mahar*, 2012 Me. Super. LEXIS 129, at *8-9. It is undisputed that Mr. Rickards worked at the Paper Mill from 1982 to 1983 and that at least some of the time was spent in the garage either observing or assisting in the removal and replacement of brakes and that during this brake work Mr. Rickards was exposed to brake dust. How this compares in intensity or duration to other instances of occupational exposure, or how much of his time was spent in the garage versus out of the garage, is irrelevant at the summary judgment stage under the *Mahar* standard. The Plaintiffs' burden is only to demonstrate product nexus through "personal contact," and that burden has been met. To the extent that ArvinMeritor is suggesting that Mr. Rickards' purported personal contact with asbestos-containing

because the Master Customer List does not reflect sales by authorized dealers, and dealerships typically purchased original equipment manufacturer's replacement parts from the truck manufacturer (*i.e.* International), the fact cannot support the proposition that Rockwell replacement parts were not used by the Paper Mill. (*See* Pl's Ex. C, 102:13-23, 103:21-104:13.)

Rockwell brake parts was not a "substantial factor" in bringing about his asbestos-caused disease, that is an argument for the jury. *See Rumery*, 2009 Me. Super. LEXIS 73, *8.

Plaintiff has also met her burden at this stage of demonstrating that Rockwell sold asbestos-containing components and replacement parts to original equipment manufacturers ("OEM") for International trucks and asbestos-containing brake assemblies to some aftermarket dealers. (Pl's Add'l S.M.F. ¶¶ 34-35.) If the brake assemblies that Mr. Rickards encountered were indeed supplied by Rockwell, Plaintiff has demonstrated that components of those brake assemblies would have contained asbestos. (Pl's Add'l S.M.F. ¶ 36.)[*] The only issue on this motion for summary judgment is thus whether Plaintiff has met her burden of demonstrating that ArvinMeritor supplied Rockwell-branded brake components that contained the asbestos to which Mr. Rickards was exposed during his employment at the Paper Mill. *See Mahar*, 2012 Me. Super. LEXIS 129, at *8-9.

Much of Plaintiff's evidence on this point is objected to by ArvinMeritor. Specifically, ArvinMeritor objects to Exhibit F (LexisNexis Maine Motor Vehicle Registrations for six International Harvester vehicles), Exhibit G (Line Setting Tickets, ostensibly for five of the Paper Mill's International-branded dump trucks), Exhibit H (technical specifications for several air brake assemblies), Exhibit I (Material Safety Data Sheet from the Abex Corporation for multiple "Identities," listed by number), Exhibit L (Deposition transcript of James Shuman, corporate representative of Navistar, in In Re: Asbestos Litigation, C.A. Nos. 08C-10-101 & 09C-07-252 (Del. Super. Ct.) dated April 15, 2011) Exhibit M (Deposition transcript of James Shuman, corporate representative of Navistar, in In Re: Asbestos Litigation, C.A. No. N10C-08-307 (Del.

---

[*] Although this fact is denied by ArvinMeritor, the Court's review of Plaintiff's Exhibits J and O makes it reasonably clear that Rockwell brake assemblies would have contained asbestos between 1982 and 1983. To the extent that there is any doubt on that point, the inference must be made in favor of Plaintiff. *See, e.g., Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63.

Super. Ct.) dated June 1, 2011), and Exhibit N (International Truck and Engine Corporation's Amended Objections and Responses to Plaintiffs' Master Interrogatories and Requests for Production Propounded to Defendants in In Re: All Asbestos-Related Personal Injury or Death Cases Filed or to Be Filed in Dallas County, Texas, e-served January 26, 2004). ArvinMeritor objects to all of the above-listed exhibits on hearsay grounds. *See* M.R. Evid. 803, 804. (Def's Reply Br. Mot. Summ. J. 1-2.) ArvinMeritor further objects to Exhibits F and G on the grounds that they are irrelevant. See M.R. Evid. 401, 402. (*Id.*)

Plaintiff filed her motion to addend Exhibit G on June 4, 2018. (*See* this Order at 1 n.1, *supra.*) *See Contractor's Crane Serv. v. CPM Constr'rs*, 1999 Me. Super. LEXIS 142 at *1 n.1 (May 14, 1999); *see also* M.R. Civ. P. 56(e) ("The court may permit affidavits to be supplemented . . . .). ArvinMeritor opposes the motion, arguing that the motion should be denied for procedural deficiencies and furthermore that the addendum would do nothing to remedy the exhibit's irrelevancy. (Def's Opp. Mot. Addend. ¶¶ 6, 9-18.) Plaintiff has not brought any motion with regards to the remaining exhibits, although Plaintiff's counsel argued for the exhibits' admission at the oral argument.

The Court grants Plaintiff's motion to addend. At the oral argument, Plaintiff's counsel represented that the line setting tickets were self-authenticating as ancient documents pursuant to M.R. Civ. P. 901(b)(8) because they were obtained by him from the Wisconsin Historical Society and that the Wisconsin Historical Society obtained the line setting tickets directly from International. Moreover, Plaintiff claims that Exhibit G is self-authenticating to the extent that it maintains the appearance, contents, substance, internal patterns, and other distinctive characteristics of a line setting ticket. M.R. Evid. 901(b)(4). Plaintiff's motion to addend therefore merely provides "additional foundational support for facts previously offered[.]" *See City of*

8

*Augusta v. Me. Att'y Gen.*, 2008 ME 51, ¶ 25, 943 A.2d 582. The Court finds that the statements included in Exhibit G are admissible notwithstanding the rule against hearsay as statements in ancient documents under M.R. Evid. 803(16), its authenticity being established pursuant to M.R. Evid. 901(b)(1),(4),(8).⁺

ArvinMeritor further claims that Exhibit G itself is inscrutable even if the Court considers it. (Def's Opp. Mot. Addend ¶ 2, 6.) In her statement of material facts, Plaintiff titles Exhibit G "Line setting tickets for trucks at the Paper Mill," and Plaintiff's counsel asserted that the line setting tickets show that at least five of the six International trucks at the Paper Mill were equipped with asbestos-containing Rockwell brake assemblies. (Pl's Mot. Addend ¶ 1.) The Court agrees with ArvinMeritor that Exhibit G is difficult to comprehend, but disagrees that it requires additional testimony for elucidation. Plaintiff's counsel's interpretation of the line setting tickets is sufficiently plausible that the Court is persuaded this is an issue of credibility and weight that should be resolved by a jury.

ArvinMeritor next argues that even if the line setting tickets show how the International trucks at the Paper Mill were equipped at the time of manufacture in 1977 or 1978, they are irrelevant to the determination of how they were equipped in 1982 when Mr. Rickards encountered them. (Def's Reply Mot. Summ J. 4.) The Court disagrees. Although it is not conclusive evidence for the proposition that the brake assemblies Mr. Rickards encountered were Rockwell brake assemblies, it does tend to make it more probable that they were. *See* M.R. Evid. 401.

---

⁺ ArvinMeritor points out that the authenticating witness's affidavit suffers from certain technical deficiencies, as it is sworn "on information and belief" as well as personal knowledge. *See* M.R. Civ. P. 56(e). (Def's Opp. Mot. Addend ¶ 18.) However, the affidavit opens with the promise that the statements therein are made on personal knowledge. In context, it is clear that the statements in the affidavit crucial to establishing its authenticity are made on personal knowledge. ArvinMeritor also notes that the affidavit does not seem to include a jurat certificate signed by the officer who took the affidavit under oath. *See id.* (*Id.*) Nonetheless, as noted, even disregarding the affidavit, Exhibit G is self-authenticating pursuant to M.R. Evid. 901(b)(4),(8).

9

In any event, Plaintiff next argues that even if the brake assemblies on the International trucks Mr. Rickards encountered were not the original brake assemblies, any replacement assemblies would have nonetheless been supplied by Rockwell, the OEM. Notwithstanding Mr. Rickards' testimony that the International-branded parts in the Paper Mill garage were not brakes (*see* Def's Opp'g S.M.F. ¶ 33), Plaintiff asserts that "Navistar"[*] acknowledges that its rebranded replacement parts were manufactured by the same companies that manufactured the original equipment installed on its chassis and that Navistar's service manuals recommended the user purchase from these brake suppliers because the user would only get the same high-quality replacement parts by purchasing such brake parts from an International dealer. (Pl's Add'l S.M.F. ¶ 37.) Plaintiff's evidence for this assertion is Exhibits L, M, and N. As noted above, ArvinMeritor argues these exhibits are inadmissible hearsay and no exception applies. *See* M.R. Evid. 801(c), 802. At the oral argument, counsel for Plaintiff argued that the exhibits are highly reliable, but did not argue that the statements therein are not hearsay, or that an exception to the rule against hearsay applies. *See* M.R. Evid. 801(d), 803. The exhibits therefore do not "set forth such facts as would be admissible in evidence" in contravention of M.R. Civ. P. 56(e).

However, as Plaintiff's counsel pointed out at the oral argument, there is nonetheless admissible evidence in the record that supports the proposition that Rockwell supplied the OEM replacement brake assemblies that were installed on the Paper Mill's International-branded trucks. (*See* Pl's Ex. C at 37:21-38:1; 93:10-12; 105:23-106:10; Def's Ex. 3 ¶ 5.) ArvinMeritor argues that this evidence, at most, identifies that Rockwell was one supplier of brake assemblies for International trucks. As such, ArvinMeritor claims that Plaintiff has failed to carry her burden

* Navistar is apparently a successor corporation of International. (*See* Pl's Ex. L.)

10

under *Mahar* to demonstrate that the brake assemblies Mr. Rickards encountered were supplied by Rockwell.

The Court disagrees. There is sufficient circumstantial evidence for a reasonable factfinder to infer that the replacement brakes on these International trucks were supplied by Rockwell. *See, e.g. Lightfoot*, 2003 ME 24, ¶ 6, 816 A.2d 63 (reasonable inferences made in favor of nonmovant on summary judgment), *see also Rumery*, 2009 Me. Super. LEXIS 73, *8 ("direct or circumstantial" evidence of personal contact sufficient). Essentially, this Court would be weighing the evidence—the job of the factfinder—if it were to decide that Mr. Rickards' testimony at his deposition establishes that the replacement brake assemblies were not provided by Rockwell notwithstanding the evidence cited by Plaintiff showing that Rockwell probably did supply the replacement brake assemblies. *Cf. Mahar*, No. BCD-CV-10-21, 2012 Me. Bus. & Consumer LEXIS 35, *10 (July 26, 2012) (summary judgment properly entered in favor of defendant where "there is not direct or circumstantial evidence from which a fact finder could reasonably conclude that the [d]ecedent was exposed to [defendant's] product that contained asbestos"). ArvinMeritor's argument regarding the weakness of Plaintiff's circumstantial case must be made to the jury.

By reason of the foregoing, ArvinMeritor's motion for summary judgment is DENIED.

II.   BRAGG

A. Facts

Bragg is a supplier of industrial, automotive, and welding products. (Def's Supp'g S.M.F. ¶ 14.) Bragg supplied auto parts for Clifford Lowe, d/b/a/ Lowe's Sand and Gravel (Lowe's) in Sumner, Maine while Mr. Rickards was employed there in 1986 and 1987. (Def's Supp'g S.M.F. ¶¶ 5, 9-13.) Mr. Rickards worked as a mechanic at Lowe's, maintaining Mr. Lowe's dump trucks as well as servicing customers' automobiles. (Def's Supp'g S.M.F. ¶¶ 5-8.) Some of this work

11

involved "brake jobs." (Def's Supp'g S.M.F. ¶ 7.) Mr. Rickards testified that "a lot of times [the brakes] were either Wagner or Bendix," and that they "mostly came" from Bragg. (Def's Supp'g S.M.F. ¶¶ 9-22, 13.) Mr. Rickards testified that other companies also supplied automotive parts to Lowe's, but that he remembered that the Bendix brakes delivered to Lowe's came from Bragg. (Def's Supp'g S.M.F. ¶¶ 10-11.) A former president of Bragg as well as Bragg's current president (and former industrial products manager) submitted affidavits swearing that Bragg has never sold or supplied Bendix or Wagner brakes or brake parts, and exclusively sold automotive brake parts manufactured by Raybestos. (Def's Supp'g S.M.F. ¶ 15-16; Def's Exs. 5-6.)

B. Analysis

Bragg downplays the extent of Mr. Rickards' exposure to asbestos at Lowe's as compared to the rest of his career; as noted above, this argument is not relevant at the summary judgment stage under the *Mahar* standard. (Def's Mot. Summ. J. 6-7.) *See Mahar*, 2012 Me. Super. LEXIS 129, at *8-9; *see also Rumery*, 2009 Me. Super. LEXIS 73, *8. Bragg's principle argument is that the evidence before the Court demonstrates that there is no genuine factual dispute that whatever asbestos-containing brake components Mr. Rickards' may have been exposed to at Lowe's were not supplied by Bragg. *Id.* (Def's Mot. Summ. J. 6-7.) Bragg claims that Mr. Rickards "simply misremembered who may have supplied the Bendix and Wagner brakes to" Lowe's, and that the Court can conclude as such because "[t]he two most knowledgeable individuals of the product lines sold by Bragg" are the affiants in Plaintiff's Exhibits 5 and 6. (Def.'s Mot. Summ. J. 7.) Bragg further argues that paragraphs 15 and 16 of its statement of material facts, which claim that Bragg never carried Wagner or Bendix, should be deemed admitted under M.R. Civ. P. 56(h)(4) because Plaintiff's denial of those facts lacked record citations. M.R. Civ. P. 56(h)(2). (Def's Reply Br. 2-3.) Bragg also objects to Plaintiff's Exhibits C and D on the grounds that they are hearsay and

12

irrelevant. M.R. Civ. P. 56(e); M.R. M.R. Evid. 801-802, 401-403. These exhibits are Honeywell International, Inc.'s discovery responses in 2010 New York state litigation and Moog Automotive's material safety data sheet for brake shoe lining containing chrysotile asbestos, respectively. Plaintiff relies on these exhibits for the proposition that Bendix and Wagner manufactured asbestos-containing brakes. (Pl's Add'l S.M.F. ¶¶ 3-5.)

The Court agrees that under M.R. Civ. P. 56(h)(2),(4) Plaintiff's denials of paragraphs 15 and 16 improperly lack record citations. However, the Court is hesitant to grant summary judgment in favor of Bragg based only on the affidavits of two former presidents of the Defendant company. *See Cach, LLC v. Kulas*, 2011 ME 70, ¶¶ 9-10, 21 A.3d 1015 (affidavit from company officer alone inadequate to support factual assertion favorable to the company; fact could not be deemed admitted despite being inadequately denied under M.R. Civ. P. 56(h)). Contrary to Bragg's claim that these affidavits "stand uncontroverted," they are controverted by Mr. Rickards' testimony. Regardless, it is plausible that Mr. Rickards correctly remembered that Bragg supplied the brakes but misremembered the brand name of those brakes. This is not inconsistent with Mr. Rickards' testimony as he said that "a lot of times they were either Wagner or Bendix." Of course, Mr. Rickards also testified that the brakes "mostly came" form Bragg; it is plausible that another supplier provided the Wagner and Bendix brake parts that he remembered. A factfinder will ultimately be asked to weigh the evidence and decide whether Bragg's affiants are more credible than Mr. Rickards' memory. In sum, there is a genuine dispute of fact as to whether Bragg supplied Wagner and Bendix (or some other brand) of brake parts to Lowe's.

The Court also agrees that Plaintiff's Exhibits C and D are hearsay. *See* M.R. Evid. 801(c), 802. However, as noted above, Mr. Rickards' testimony does not foreclose the possibility that Bragg supplied brakes other than Wagner or Bendix to Lowe's. Furthermore, Defendants do not

13

deny that Wagner and Bendix-branded brakes contained asbestos; they merely qualify the proposed facts and note the objection to the exhibits. The Court thus rules that viewing the evidence in a light most favorable to her, Plaintiff has adduced sufficient evidence that Mr. Rickards was exposed to asbestos from brake components supplied by Bragg while employed at Lowe's.

Defendant Bragg's motion for summary judgment is therefore DENIED.

III.    DANA

A. Facts

Mr. Rickards was potentially exposed to asbestos from head gaskets manufactured by Dana from two sources: (1) "Victor"-branded gaskets from his "shade tree" automotive work from the mid-1970s to 2001 and (2) through his employment at a John Deere ("Deere") dealership for two discrete periods, first from 1976-1978 and then from 1987-1991. (Def's Supp'g S.M.F. ¶¶ 14-16, 18.) In his deposition, Mr. Rickards recalled using Victor gaskets specifically on three "shade tree" projects: in 1976, 1980, and 2001. (Def's Supp'g S.M.F. ¶¶ 14-16.) During Mr. Rickard's first period of employment the Deere dealership was called W.S. Abbot; during the second it was called Metco. (Def's Supp'g S.M.F. ¶ 18.) Mr. Rickard's work at the Deere dealership during both periods involved regularly removing and replacing head gaskets from Deere equipment. (Def's Supp'g S.M.F. ¶ 20; Pl's Opp'g S.M.F. ¶ 20.) This work exposed him to particles from the removed gasket material. (Pl's Add'l S.M.F. ¶ 30; Def's Opp'g S.M.F. ¶ 30.) Mr. Rickards would then install a new, pre-cut gasket that was "partly metal and partly gasket." (Def's Supp'g S.M.F. ¶ 20; Pl's Opp'g S.M.F. ¶ 20.) Mr. Rickards testified that he used OEM parts to replace head gaskets. (*Id.*) Dana supplied gaskets for Deere equipment, some of which gaskets contained asbestos, during the time of Mr. Rickards' employment at the dealership. (Def's Supp'g S.M.F. ¶ 21; Pl's Opp'g S.M.F. ¶

14

21.) The parties dispute whether Dana was the exclusive provider for any of the Deere OEM gaskets that Mr. Rickards would have removed or replaced. (Def's Supp'g S.M.F. ¶¶ 21-22; Pl's Add'l S.M.F. ¶¶ 27-29.) Dana objects to several of the exhibits proffered by Plaintiff in her opposition to this motion on the ground that they are irrelevant and/or hearsay. (Pl's Reply Mot. Summ J. 3-6.)

B. Analysis

The Court again notes that the extent of Mr. Rickards' exposure to asbestos at W.S. Abbot/Metco and from "shade tree" work as compared to the rest of his career is not relevant under the *Mahar* standard. *See Mahar*, 2012 Me. Super. LEXIS 129, at *8-9. (*See* Def's Supp'g S.M.F. ¶¶ 1-12.)

Dana objects to multiple exhibits that Plaintiff cites in her proposed additional statements of fact on hearsay and relevancy grounds. (*See* Pl's Exs. D, E, F, G, H, I, L.) Several of these exhibits include statements that were made by Dana in some capacity: *viz.* Plaintiff's Exhibit D (Dana's Objections and Responses to Plaintiff's Interrogatories in In Re: Asbestos Litigation, No. 77C-ASB-2 (Del. Super. Ct.) dated April 7, 2008), Exhibit F (Transcript of the Deposition of Gary Austin, Corporate Representative of Dana, in *Pyle v. Able Supply Co.*, No. 01CV1140 (Tex. Dist. Ct.) dated September 16, 2003), Exhibit G ("News Release" from Dana dated June 12, 1980 titled "Victor Asbestos Free Gaskets"), and Exhibit H (advertisement for Victor gaskets). These exhibits are exempted from the definition of hearsay by M.R. Evid. 801(d)(2)(A) as admissions by a party-opponent. On the other hand, while Plaintiff's Exhibit E (John Zeitz, *What Will Replace Asbestos Gaskets?*, DIESEL & GAS TURBINE PROGRESS, July 1980) was authored by the division chief engineer at the Victor Products Division of Dana, Mr. Zeitz makes no statements on behalf of Dana in the article; the language is couched exclusively in terms of general industry practices.

15

Nothing in the article could be read as an admission on behalf of Dana. No exception to the rule against hearsay applies. *See* M.R. Evid. 803.

The remaining exhibits are not exempted from the definition of hearsay, and no exceptions to the rule against hearsay applies. *See id.* However, as explained below, even if these other exhibits are not considered Plaintiff has nonetheless met her burden of showing that Dana supplied asbestos-containing gaskets and that Mr. Rickards had personal contact with those gaskets through his employment at W.S. Abbot/ Metco and his own personal "shade tree" automotive work.

As a threshold matter, Dana is the only Defendant referenced in this Order who argues that Plaintiff has failed to adduce prima facie evidence of medical causation. Dana argues that Plaintiff's expert report of Dr. Steven Compton is limited to friction materials such as brake linings. (*See* Def's Supp'g S.M.F. ¶ 25.) Although Plaintiff denies this fact, her denial is grounded only on the proposition that the opinions expressed in the expert's report are with regard to friction materials generally. (Pl's Opp'g S.M.F. ¶ 25.) The Court notes that gaskets, by definition, are not "friction materials;" their purpose is to make a joint fluid-tight. *See Gasket*, MERRIAM-WEBSTER (June 12, 2018), https://www.merriam-webster.com/dictionary/gasket.

However, Dr. Compton is not the only expert who has been disclosed in this case. (*See* Def's Ex. L.) Plaintiff points out that industrial hygienist William Ewing has also been disclosed as an expert, and that he will testify to the significant levels of asbestos to which Mr. Rickards' mechanical work with Victor and Deere OEM gaskets exposed him. (Pl.'s Opp'n to Def.'s Mot. Summ. J. 3-4; *see* Pl's Add'l S.M.F. ¶ 37.) Even ignoring Mr. Ewing's prior testimony, which is hearsay (*see* Pl's Ex. K), Plaintiff disclosed that Mr. Ewing would "testify about the science of industrial hygiene and its application to asbestos and asbestos-containing materials . . . [and] the hazards associated with the cutting, abrading, sanding, manipulation and/or grinding of asbestos-

16

containing materials . . . . Mr. Ewing may testify about the asbestos exposures of Decedent based on his review of deposition testimony and other available materials . . . ." (Def's Ex. L.) Contrary to Dana's position, Plaintiff's claims regarding Mr. Ewing's expected testimony in opposition to the instant motion is consistent with, and not a "drastic departure" from, this disclosure. (Def's Reply Mot. Summ. J. 2.) The cases cited by Dana do not support the proposition that Plaintiff failed to meet her continuing obligation to identify and provide expert testimony under M.R. Civ. P. 26. *See Beaudin v. Beaulieu*, 472 A.2d 426, 428 (Me. 1984) (holding that non-compliance with explicit court order that plaintiff provide expert report to defendant justified trial court in excluding expert testimony); *Johnson v. Carleton*, 2001 ME 12, ¶ 8, 765 A.2d 571 (holding that trial court did not err in striking plaintiff's untimely expert witness designation). (Def's Reply Mot. Summ. J. 2.) The Court therefore rules that Plaintiff has met her burden to adduce prima facie evidence of medical causation.

Dana is also the only of these three Defendants to raise an argument for summary judgment aimed specifically at the "failure to warn" component of Plaintiff's statutory strict products liability claim. (Pl's Compl. ¶¶ 9, 11a-b, 16-17.) For Plaintiff to establish that Dana's products were defective due to a failure to warn, she must prove the following elements: (1) Dana had a duty to warn Mr. Rickards of its product hazard; (2) any actual warning on the product was inadequate, and (3) the inadequate warning or absence of a warning proximately caused Mr. Rickard's injuries. *See Burns v. Arch'l Doors & Windows*, 2011 ME 61, ¶ 23, 19 A.3d 823. Dana argues that Mr. Rickards testified that he observed warnings in Victor product packages and the Deere equipment manuals and that Plaintiff has failed to adduce any evidence that Dana had a duty to warn Mr. Rickards, the warnings Mr. Rickards observed were inadequate, or that Dana's failure to warn was a proximate cause of Mr. Rickards' illness and subsequent death. (Def.'s Mot. Summ.

17

J. 13-14.) In opposition, Plaintiff argues that the evidence shows that Dana did have a duty to warn Mr. Rickards of the hazard posed by its product, but does not address the remaining two elements in argument. (Pl.'s Opp'n to Def.'s Mot. Summ. J. 5.) The Court nonetheless declines to grant Dana summary judgment on this claim. Although Plaintiff's burden in defense of summary judgment is to adduce prima facie evidence of each element of its cause of action, "failure to warn" is not a cause of action. *See* 14 M.R.S. § 221. It is a way a plaintiff can prove entitlement to recovery pursuant to a strict product liability action. To the extent that *Burns*, 2011 ME 61, ¶¶ 23-27, 19 A.3d 823, supports a different outcome, the Court notes that that case was decided on a different procedural posture. There, the trial court had allowed the plaintiff to proceed on his strict product liability cause of action on summary judgment, but ultimately declined to give the plaintiff's requested jury instruction because "no evidence of a warning had been presented" at trial. *Id.* ¶¶ 6-9, 23-25. The trial court denied the defendant's motion for summary judgment in the first instance. *Id.* ¶ 9.

Finally, Dana argues that Plaintiff has failed to demonstrate that Mr. Rickards had "personal contact" with asbestos from a Dana-supplied product. (Def.'s Mot. Summ. J. 10-11.) In its motion, Dana concedes that Mr. Rickards testified that he used Victor gaskets for three engine rebuilds in 1976, 1980, and 2001. (Def's Supp'g S.M.F. ¶¶ 13-16.) As noted above, notwithstanding Dana's arguments to the contrary, there is evidence that Mr. Rickards' limited exposure to these asbestos-containing gaskets could have been a medical cause of his illness and subsequent death. Whether this exposure was a "substantial factor" in bringing about Mr. Rickards' disease sufficient to impose liability on Dana is a question for the jury. *See Rumery*, 2009 Me. Super. LEXIS 73, at 8-9; *see also Grant*, 2016 ME 85, ¶ 19, 140 A.3d 1242. Mr. Rickards' undisputed personal contact

18

with Dana-manufactured Victor-branded gaskets forecloses a summary judgment being granted in its favor.

Dana concedes that it supplied gaskets to Deere dealerships during the time periods that Mr. Rickards was employed at W.S. Abbot/ Metco. (Def's Supp'g S.M.F. ¶ 21.)' However, Dana claims that it was not the sole supplier for any gaskets to Deere, and did not supply any gaskets for at least two models of Deere-branded skidders that Mr. Rickards specifically testified to removing and replacing the gaskets of. (*Id.* ¶¶ 21-22.)Dana also admits that some—but not all—of the gaskets it sold to Deere contained asbestos. (*Id.* ¶ 22.) Dana thus argues that Plaintiff can only establish that Dana supplied some gaskets, which may not have contained asbestos, to some Deere dealerships; she cannot demonstrate that Dana supplied the gaskets Mr. Rickards was exposed to, or that if it did, that those gaskets contained asbestos.

Plaintiff claims that in fact Dana was the sole supplier of several asbestos-containing OEM gaskets for Deere equipment during the timeframe in which Mr. Rickards worked on Deere equipment at W.S. Abbot/ Metco. (Pl's Add'l S.M.F. ¶¶ 27-28.) Plaintiff points out that Deere's corporate representative testified that Deere would "attempt" to approve three different suppliers for each part, but that "there were certain suppliers that characteristically supplied certain products." (Def's Ex. I at 98:1-2, 101:14-21.) Plaintiff further points out that Deere's interrogatory responses in this lawsuit suggest that Dana was the exclusive provider of gaskets for some of the Deere equipment Mr. Rickards testified that he performed engine work on, which would have involved removing and replacing gaskets. (Def's Ex. H at Pl's Interrog. No. 1.) With regards to whether the gaskets Dana would have supplied to W.S. Abbot/ Metco contained asbestos, Plaintiff points out that Mr. Rickards testified that the gaskets he installed were "partly metal and partly

---

' Although Plaintiff denies this fact, the denial lacks proper record citation. M.R. Civ. P. 56(h)(4). Furthermore, it is clear from context that Plaintiff only denies the proposition that Dana was *not a sole supplier* of any gaskets to Deere.