MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:      2016 ME 100
Docket:        Cum-15-67
Argued:        December 9, 2015
Decided:       July 7, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

ESTATE OF LOIS W. SMITH et al.

v.

TIMOTHY SALVESEN

HJELM, J.

[¶1]   In this premises liability case, Eugene J. Smith, individually and as personal representative of the Estate of Lois W. Smith, appeals from a summary judgment entered in the Superior Court (Cumberland County, *Mills, J.*) in favor of Timothy Salvesen on Smith's complaint for the wrongful death of his wife based on allegations of negligence.  Smith argues that the court erred by (1) disregarding certain statements in his affidavit and the affidavit of his expert witness, and (2) concluding that he had not presented a prima facie case that Salvesen's alleged negligence was a proximate cause of his wife's fatal injuries.  We affirm the judgment.

## I. BACKGROUND

[¶2]   Viewed in the light most favorable to Eugene Smith as the nonprevailing party, the summary judgment record contains the following facts. *See Brown v. Delta Tau Delta*, 2015 ME 75, ¶ 2, 118 A.3d 789.

[¶3]  In October 2012, Eugene and Lois Smith traveled to Maine to attend an event at Hebron Academy, where they were being honored for their work as benefactors and trustees.  The Smiths had made arrangements through the school to stay at the Maine Farmhouse, a guesthouse owned and operated by Salvesen and located in Woodstock.  A member of the school's staff gave the Smiths directions and a passcode to enter the guesthouse, and told them that they would be staying on the second floor.  The Smiths did not receive a room number or any other information about their accommodations, nor did they speak with Salvesen before their trip.

[¶4]  Upon arriving at the Maine Farmhouse, the Smiths let themselves in the front door and selected a room on the second floor.  The Smiths were not aware that the room they chose was actually a two-floor suite with an upstairs bedroom that was connected to a downstairs living room by a private staircase.  After the Smiths went out to dinner, they returned to their room and went to bed.

[¶5]  The next thing Eugene Smith remembers is being awakened around 7:00 a.m. by a loud crash and Lois Smith's scream.  He ran out of the room to

search for her in the upstairs hallway and then, not finding her, returned to the bedroom where, for the first time, he noticed the staircase located within the suite. He found his wife lying on a landing on the staircase and bleeding from her head. She was eventually transported to a hospital and died the next day from her injuries.

[¶6]  In September 2013, Eugene Smith filed a complaint for negligence and wrongful death, 18-A M.R.S. § 2-804 (2015),[1] which, as later amended, named Salvesen as the defendant.  Smith alleged in the complaint that the guesthouse premises were unreasonably dangerous, in part because the staircase in the bedroom did not conform with applicable safety standards, and that the defects in the staircase were a proximate cause of Lois Smith's fatal injuries.

[¶7]  In October 2014, Salvesen moved for a summary judgment, *see* M.R. Civ. P. 56, arguing that the evidence failed to support a claim that any alleged negligence by Salvesen caused Lois Smith's fall.  In his statement of material facts, Salvesen asserted that nobody knew how or from where Lois Smith fell.  To support these assertions, Salvesen cited to deposition testimony from Eugene Smith, taken in October 2013, where Smith stated that at the time of the fall, he was asleep and did not "have the slightest idea" whether his wife was descending

---

[1]  Title 18-A M.R.S. § 2-804 has since been amended, though not in any way that affects the present case.  P.L. 2016, ch. 451 (effective July 29, 2016) (to be codified at 18-A M.R.S. § 2-804(b)).

the staircase when she fell. Salvesen also cited to deposition testimony from Richard Dolby, Smith's designated expert on building code standards. Dolby inspected the staircase and found two violations of the Life Safety Code, which he determined applied to the Maine Farmhouse.[2] First, he found that when descending the staircase from the second floor, the height of the first riser was one inch less than the height of the next riser—a difference that exceeds permissible limits. Second, he found that the staircase railing fell below minimum height requirements measured from the steps, and that it was installed at an improper angle so that it was two inches closer to the bottom steps than to the top steps. When Salvesen deposed Dolby in May 2014, Dolby stated that he did not know whether Lois Smith traversed the top two steps or whether the railing and riser height violations had anything to do with her fall.

[¶8]   In his opposition to Salvesen's motion, Eugene Smith denied Salvesen's assertion that nobody knew how or from where Lois Smith fell. He submitted an additional statement of fact, *see* M.R. Civ. P. 56(h)(2), based on an affidavit that he executed in October 2014, a year after his October 2013 deposition. In the affidavit, he stated that because he heard a loud crash, he

---

[2]   The Life Safety Code is a model code published by the National Fire Protection Association. The Code of Maine Rules incorporates the 2009 edition of the Life Safety Code by reference, with certain modifications and exclusions that are inapplicable here. *See* 9 C.M.R. 16 219 020 § 1 (2011). Although Dolby appears to have relied on the 1991 edition of the code, there are no substantive differences between the 2009 edition and the 1991 edition that are relevant in the present case.

"assume[d]" his wife fell from the top of the stairs. Smith also made an assertion of fact that was based on an affidavit that Dolby executed in October 2014, after Dolby had been deposed. In the affidavit, Dolby stated, "[I]t is my opinion that the one-inch differential in riser height and the known risks associated with such a defect should be considered a critical factor in deciding whether an inference of causation can reasonably be drawn." He further stated that, in his opinion, "the railing defects may also have made Lois Smith's fall even more inevitable, as [they] could well have affected her stability and ability to regain her balance if she lost it."

[¶9]   In January 2015, the court entered a summary judgment in favor of Salvesen, concluding that Smith had failed to make a prima facie showing of causation. In its judgment, the court stated that it did not rely on Smith's statement that he believed his wife fell from the top of the stairs "to the extent it conflicts with his [earlier] deposition testimony." The court also stated that it did not rely on Dolby's statement that differences in the riser heights "should be considered" as evidence of causation, reasoning that Dolby had not offered that opinion in his prior sworn testimony, that it was "conjecture," and that it constituted a "new expert opinion" that had not been properly disclosed. Smith timely appealed. *See* 14 M.R.S. § 1851 (2015); M.R. App. P. 2.

## II. DISCUSSION

[¶10] Smith asserts that the court erred by excluding from the record on summary judgment statements that he and Dolby made in post-deposition affidavits, and by concluding that the summary judgment record did not generate a factual issue on causation. We consider these arguments in turn.

A. Contradiction Between Affidavits and Deposition Testimony

[¶11] Smith first argues that the court erred by not considering certain statements in his affidavit and Dolby's because, he argues, the statements did not directly contradict their earlier deposition testimony.

[¶12] In summary judgment motion practice, "a party will not be permitted to create an issue of material fact . . . simply by submitting an affidavit disputing his own prior sworn testimony," unless he provides "a satisfactory explanation of why the testimony is changed." *Zip Lube, Inc. v. Coastal Sav. Bank*, 1998 ME 81, ¶ 10, 709 A.2d 733 (quotation marks omitted); *accord, e.g.*, *Schindler v. Nilsen*, 2001 ME 58, ¶ 10, 770 A.2d 638 (concluding that a trial court properly excluded a portion of a party's affidavit that was "directly contrary to her prior sworn testimony").

[¶13] Here, Smith testified in a deposition that he did not "have the slightest idea" whether his wife was descending the stairs when she fell. After Salvesen moved for summary judgment, Smith executed an affidavit stating that he heard

"a loud crashing" noise, which he "assume[d] was [his wife] falling from the top of the stairs." In its judgment, the court merely stated that it would disregard the statement in Smith's affidavit "to the extent" that it conflicted with Smith's earlier deposition testimony. The court did not state that there was a conflict or, if so, what the conflict entailed, and Smith did not move for the court to issue any further conclusions on the issue. The court's statement therefore is nothing more than a reiteration of the doctrine prescribed in *Zip Lube, Inc.* and does not constitute error.[3]

[¶14] As to evidence of Dolby's opinion, he testified during a deposition that he did not know whether Smith's wife was descending or ascending the staircase when she fell, where she was when she fell, whether she was using the handrail or even knew that it was there, or whether the railing and riser height defects had anything to do with the fall. In the affidavit that Dolby executed after Salvesen filed his motion for summary judgment, however, he acknowledged that although he could not "say for certain" how Smith's wife fell, it was his "opinion that the [one-inch] differential in riser height and the known risks associated with

---

[3] We also note that Smith *assumed* that the noise was from the top of the stairs and that his wife must have fallen from there. Because Smith did not have personal knowledge about his wife's location when she fell, the record does not demonstrate that he was competent to testify on that point, and his statement was subject to exclusion on that basis. *See* M.R. Civ. P. 56(e) (stating that "opposing affidavits . . . shall set forth such *facts as would be admissible in evidence*" (emphasis added)); M.R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

8

such a defect should be considered a critical factor in deciding whether an inference of causation can reasonably be drawn." As the court correctly noted, Dolby never offered this opinion during his deposition.[4] Further, the statement contradicts his testimony given at that deposition that he did not know whether the defects in the staircase were related in any way to the fall. Therefore, the court properly disregarded it.[5]

[¶15]    The court also excluded Dolby's opinion on causation from the summary judgment record for the separate reason that it constituted a "new expert opinion" that Smith never properly disclosed. In the expert designation that, in a scheduling order, the court ordered Smith to provide Salvesen, *see* M.R. Civ. P. 16(a)(1), Smith designated Dolby as a building code expert to explain that the staircase failed to meet code requirements. Smith did not designate Dolby as an expert on fall causation or otherwise supplement the record to disclose that Dolby would be offering opinions on that subject. *See* M.R. Civ. P. 26(e)(1). Dolby's statement that the stairway's design defects might support an inference of

---

[4]    Although Smith's statement of additional material facts, *see* M.R. Civ. P. 56(h)(2), includes a general assertion by Dolby that "inconsistent riser heights [are] a leading cause of stairway falls," Smith has not presented an opinion by Dolby that the riser heights caused *Lois Smith* to fall, and, as noted in the text and as Salvesen correctly asserted in his statement of material facts, *see* M.R. Civ.P. 56(h)(1), Dolby testified that he does not know from where she fell or whether either of the alleged defects in the stair system were related in any way to the fall.

[5]    Dolby also asserted in his affidavit that in his opinion, the defects in the handrail may have contributed to Lois Smith's fall. Although, in its judgment, the court did not comment on whether it relied on Dolby's opinion about the handrail defects, we note that it too must be disregarded because it contradicts his deposition testimony.

causation therefore exceeds the bounds of the expert witness designation, and the court properly excluded it from the summary judgment record. *Cf. Poulis-Minott v. Smith*, 388 F.3d 354, 359 (1st Cir. 2004) (affirming a court's decision to strike portions of an affidavit expressing an expert opinion that exceeded the scope of the expert witness designation); *Samaan v. St. Joseph Hosp.*, 274 F.R.D. 41, 46-48 (D. Me. 2011) (precluding expert testimony from two witnesses on the issue of proximate cause when the plaintiff failed to designate the witnesses as causation experts).

[¶16]   The court therefore did not err by refusing to consider Smith's assertion that he believed his wife fell from the top of the stairs, and Dolby's assertion that the defects in the staircase constitute evidence of causation.

B.    Prima Facie Showing of Causation

[¶17]   Smith next contends that the trial court erred by granting a summary judgment in favor of Salvesen, arguing that a jury could reasonably infer causation from evidence that aspects of the stairway were defective because they did not meet code standards.

[¶18]   We review the grant of a motion for summary judgment de novo, viewing the evidence and any reasonable inferences in the light most favorable to the nonprevailing party to determine whether a genuine issue of material fact exists. *Bell v. Dawson*, 2013 ME 108, ¶ 15, 82 A.3d 827. "An issue is genuine if

the party opposing summary judgment presents sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Id.* To successfully oppose a motion for summary judgment, "the plaintiff must establish a prima facie case for each element of [his or] her cause of action." *Id.* ¶ 16 (quotation marks omitted). "We will affirm the grant of a summary judgment against a plaintiff who presents insufficient evidence to support an essential element in her cause of action, such that the defendant would be entitled to judgment as a matter of law on that state of the evidence at a trial." *Id.*

[¶19] Here, to establish a prima facie case for negligence, Smith must present sufficient evidence that would allow a fact-finder to reasonably determine that Salvesen owed Smith's wife a duty of care, that Salvesen breached that duty, and that the breach of duty caused Smith's wife's injuries. *See id.* ¶ 17; *Durham v. HTH Corp.*, 2005 ME 53, ¶ 8, 870 A.2d 577.

[¶20] There is no dispute that, as the owner of a commercial guesthouse, Salvesen had a "positive duty" to exercise reasonable care to protect guests from dangerous conditions on the premises of which he knew or reasonably should have known. *See Durham*, 2005 ME 53, ¶ 8, 870 A.2d 577 (quotation marks omitted). The evidence presented here would permit a jury to reasonably find that Salvesen did not satisfy that duty because the staircase in the guesthouse did not comply

with applicable building codes.[6]  The remaining question is whether there is evidence that would allow a jury to reasonably find that Salvesen's failure to remedy the alleged defects in the staircase was a proximate cause of Lois Smith's fall.

[¶21]  "Causation is . . . a question of fact, requiring proof that there is some reasonable causal connection demonstrated in the record between the act or omission of the defendant and the damage that the plaintiff has suffered." *Estate of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 17, 60 A.3d 759.  Causation need not be proved directly but may be inferred if the inference flows logically from the facts and is not unduly speculative.  *See Marcoux v. Parker Hannifin/Nichols Portland Div.*, 2005 ME 107, ¶¶ 25-26, 881 A.2d 1138; *Rodrigue v. Rodrigue*, 1997 ME 99, ¶¶ 14-15, 694 A.2d 924.  If, however, "there is so little evidence tending to show that the defendant's acts or omissions were the proximate cause of the plaintiff's injuries that the jury would have to engage in conjecture or speculation in order to return a verdict for the plaintiff," then the defendant is entitled to summary judgment.  *Addy v. Jenkins, Inc.*, 2009 ME 46, ¶ 12, 969 A.2d 935 (quotation marks omitted).

---

[6]  Smith also argues that Salvesen breached his duty of care by failing to install warning signs, emergency lighting, or a gate at the top of the staircase, and by failing to have staff present to warn guests about possible hazards on the premises.  Because there is no evidence that any of these alleged defects fell below the applicable standard of care or that there was a causal connection between these defects and Lois Smith's fall, we do not discuss them further.

[¶22]   In *Addy*, we concluded that the evidence was insufficient to support an inference of causation when the plaintiff alleged that he fell from staging, erected by the defendant, that "had not been fully completed and was missing some ladders, platforms, and railings." *Id.* ¶ 11.  We concluded that because the plaintiff had "presented evidence of only *from where* he fell, rather than *how* he fell," he had failed to establish causation. *Id.* ¶ 14.  On that record, any finding of causation necessarily "would be based on speculation or conjecture," and we therefore affirmed the entry of a summary judgment in favor of the defendant. *Id.* ¶ 15.

[¶23]   In a number of other cases*,* we concluded that an inference of causation was *not* unduly speculative when the evidence was sufficient for a fact-finder to determine that the plaintiff came into direct contact with an allegedly dangerous condition created by the defendant. *See Marcoux*, 2005 ME 107, ¶ 26, 881 A.2d 1138 (concluding that the plaintiff made a prima facie showing of causation when she alleged that she saw a green stain on the floor and "felt something slippery when she fell"); *Rodrigue*, 1997 ME 99, ¶ 15, 694 A.2d 924 (involving a plaintiff who testified that she "slipped when she stepped on some of the debris left on the stairs"); *Thompson v. Frankus*, 151 Me. 54, 58-61, 115 A.2d 718 (1955) (concluding that the evidence supported an inference of causation when it established that the plaintiff fell from a step covered with defective linoleum and there was no other explanation for the accident).

[¶24]  Here, the evidence is insufficient for a jury to reasonably infer that there was a causal connection between either of the two defects in the stairway and Lois Smith's fall.  In *Addy*, the plaintiff presented evidence sufficient for a jury to infer that he fell from the dangerous staging.  2009 ME 46, ¶ 11, 969 A.2d 935. Here, as the court correctly observed, Smith's evidence of causation falls short of the type of evidence presented in *Addy*, which itself was insufficient to withstand a motion for summary judgment, because the present record would not even allow a determination that Lois Smith fell when she was on the staircase.

[¶25]  Further, even if there were evidence allowing a jury to find that Lois Smith fell from the staircase, the record would not allow a determination that she had encountered either of its dangerous defects.  Just as Smith's own expert was unable to determine whether Lois Smith used the handrail or traversed the section of the staircase where the riser heights varied, a jury would not be able to make such a finding without resorting to guesswork.  The circumstances here are therefore distinguishable from those in *Marcoux*, *Rodrigue*, and *Thompson*, because a jury would be left to speculate about whether Lois Smith came into contact with the allegedly dangerous conditions and therefore whether her fall was linked in any way to those conditions.

[¶26]  In short, as with the absence of causal evidence in *Addy*, the record here is devoid of evidence that would allow a jury to make a reasonable finding of

how she fell.  The record also is insufficient to allow a jury to determine even her location at the time of the fall.  Consequently, the evidence cannot support any finding that the arguably unsafe premises bore a causal connection to Lois Smith's injuries, and Salvesen is entitled to judgment as a matter of law.[7]

The entry is:

Judgment affirmed.

---

**On the briefs and at oral argument:**

Michelle Allott, Esq., Farris Law, Gardiner, for appellants Eugene J. Smith and Estate of Lois Smith

Elizabeth A. Germani, Esq., Germani Martemucci & Hill, Portland, for appellee Timothy Salvesen

Cumberland Superior Court docket number CV-2013-388
FOR CLERK REFERENCE ONLY

---

[7] Salvesen also argues that Lois Smith had a number of medical conditions that could explain her fall just as easily as the defective staircase.  Because Eugene Smith has not made a prima facie showing that the fall resulted from the condition of the staircase, the existence of alternative nonnegligent explanations need not be considered.