MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2021 ME 65
Docket:         BCD-21-35
Argued:         October 7, 2021
Decided:        December 23, 2021

Panel:          STANFILL, C.J., and MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

YANKEE PRIDE TRANSPORTATION AND LOGISTICS, INC.

v.

UIG, INC.

STANFILL, C.J.

[¶1]  Yankee Pride Transportation and Logistics, Inc., (Yankee Pride) appeals from a summary judgment entered in the Business and Consumer Court (*Murphy, J.*) in favor of UIG, Inc., (UIG) on Yankee Pride's claims of negligence, breach of contract, and breach of fiduciary duty.  Yankee Pride argues that there is sufficient record evidence from which a rational jury could conclude that UIG breached the ordinary, contractual, and fiduciary duties it owed Yankee Pride.  Because there is no genuine issue of material fact as to causation, we affirm.

## I. BACKGROUND

[¶2]  The following facts, drawn from the parties' statements of material facts, are undisputed.  *Progressive Nw. Ins. Co. v. Metro. Prop. & Cas. Ins. Co.*, 2021 ME 54, ¶ 2, 261 A.3d 920.

[¶3]  Yankee Pride is a long-distance freight hauler owned by Larry Sidelinger.  UIG is an independent insurance agency that acts as an intermediary between its clients and the insurance carriers it represents. Yankee Pride engaged UIG to handle its insurance needs starting in 2012.  UIG employee Karie Michaud managed Yankee Pride's account.  The parties had a course of dealing over the years that included UIG "facilitating Yankee Pride's renewal of its insurance on an annual basis."  In 2014, Michaud secured a policy for Yankee Pride from Great West Casualty Company (Great West) and renewed that policy at the ends of 2015, 2016, and 2017.

[¶4]  On February 20, 2018, Great West sent UIG a notice of nonrenewal regarding Yankee Pride's policy, which was due to expire on December 27, 2018.[1]  The notice cited Yankee Pride's poor safety record as the basis for

---

[1]  The parties agree that, although Great West had a duty to notify Yankee Pride of its intent not to renew Yankee Pride's policy, UIG had no obligation to deliver Great West's notice of nonrenewal to Yankee Pride.  *See Sunset Enters. v. Webster & Goddard, Inc.*, 556 A.2d 213, 215 (Me. 1989) ("We see no basis for concluding as a matter of common law tort that whenever a carrier cancels coverage an agent has a separate obligation to notify the customer.").  Yankee Pride did not receive Great West's

nonrenewal. After receiving the notice, Michaud contacted Great West underwriter Craig Harmon and asked him if Great West would reconsider its decision regarding Yankee Pride. Harmon told Michaud to contact him closer to the time of renewal, at which point he would assess whether Yankee Pride's safety problems persisted.

[¶5] Michaud had been trying to contact Harmon for "quite some time" to revisit the renewal issue before finally speaking with him by phone on or around December 21, 2018—less than a week before Yankee Pride's policy was due to lapse.[2] Harmon asked Michaud to send him the details of her request in writing, which she did by email that same day. Michaud also called Sidelinger on December 21, 2018, and told him about her difficulties renewing Yankee Pride's policy with Great West. Sidelinger asked Michaud if he should shop around for insurance himself and thereafter contacted at least one other insurance agency. Meanwhile, Great West affirmed its decision not to renew Yankee Pride's policy in late December 2018 based on Yankee Pride's safety record.

---

notice of nonrenewal in February 2018 and did not become aware of the notice until, at the earliest, December 21, 2018.

[2] Michaud started searching for insurance policies from insurers other than Great West on December 11, 2018.

4

[¶6]  On January 2, 2019, six days after Yankee Pride's policy lapsed, Michaud emailed Sidelinger to inform him that Yankee Pride could secure insurance by entering an assigned risk insurance pool[3] and estimated what the policy would cost.  Michaud informed Sidelinger that Yankee Pride would have to include a check for twenty-five percent of the policy's cost with an application for insurance.  Sidelinger forcefully declined the assigned-risk-pool option because he thought it was too expensive.

[¶7]  Peter Clavette, UIG's agency manager and Michaud's supervisor, emailed Sidelinger on January 9, 2019, about the renewal issues.  Clavette admitted that UIG had let Yankee Pride "know about the issues in finding coverage way too late."

[¶8]   After its insurance lapsed, Yankee Pride lost a client, Huber Engineered Woods (Huber), because it could not provide proof of insurance.  A Huber representative testified at a deposition that the company would have remained a client had Yankee Pride been able to provide proof of insurance.  The loss of Huber was a major blow to Yankee Pride's business.

---

[3]  Generally, the assigned risk insurance pool is a group of individuals or entities that are unable to procure insurance through ordinary methods.  *See* 24-A M.R.S. § 2325 (2021).

[¶9]  Yankee Pride filed a complaint against UIG alleging negligence and breach of contract and later added a count for breach of fiduciary duty.  UIG moved for summary judgment on all counts, which the court granted on the ground that there was no genuine dispute of material fact as to breach of duty.  After having its motion for reconsideration denied, Yankee Pride timely appealed.  *See* M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

### A.    Standard of Review

[¶10]  We review a grant of summary judgment de novo, considering the evidence and any reasonable inferences thereof in the light most favorable to the non-prevailing party to determine whether there is a genuine issue of material fact.  *Grant v. Foster Wheeler, LLC*, 2016 ME 85, ¶ 12, 140 A.3d 1242.  We will affirm a grant of summary judgment if the record reflects that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  *Golder v. City of Saco*, 2012 ME 76, ¶ 9, 45 A.3d 697.  "A fact is material if it has the potential to affect the outcome of the suit, and a genuine issue of material fact exists when a fact-finder must choose between competing versions of the truth, even if one party's version appears more credible or

persuasive." *Holmes v. E. Me. Med. Ctr.*, 2019 ME 84, ¶ 15, 208 A.3d 792 (quotation marks omitted).

[¶11] We may affirm a summary judgment on alternative grounds from the trial court decision when we determine, as a matter of law, that there is another valid basis for the judgment. *Est. of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 22, 60 A.3d 759.

## B.    Breach of Contract

[¶12] Yankee Pride argues that it had an implied contract with UIG based on the parties' long-standing relationship and that UIG breached that contract by failing to make timely efforts to renew Yankee Pride's policy. The parties agree that their course of dealing included UIG "facilitating Yankee Pride's [insurance] renewal" each year. However, even if UIG had impliedly contracted to advise Yankee Pride of insurance policy details without an affirmative request for that information, Yankee Pride's claim for breach of contract fails for lack of causation. *See Me. Energy Recovery Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶ 7, 724 A.2d 1248 (establishing the elements of a claim for breach of contract).

[¶13] To survive a defendant's motion for summary judgment, the plaintiff must produce prima facie evidence for each element of its cause of

action. *Est. of Smith v. Salvesen*, 2016 ME 100, ¶ 18, 143 A.3d 780. Among other elements, Yankee Pride must produce evidence showing that UIG's alleged breach proximately caused the injuries it suffered, *Me. Energy Recovery Co.*, 1999 ME 31 ¶ 7, 724 A.2d 1248, namely, losing a flagship client and ultimately its business because it was uninsured after December 27, 2018. "'Proximate cause is an action occurring in a natural and continuous sequence, uninterrupted by an intervening cause, that produces an injury that would not have occurred but for the action.'" *Toto v. Knowles*, 2021 ME 51, ¶ 10, 261 A.3d 233 (quoting *Cyr v. Adamar Assocs. Ltd. P'shp*, 2000 ME 110, ¶ 6, 752 A.2d 603).

[¶14] Yankee Pride offered no evidence to show that UIG could have found an insurer willing to issue Yankee Pride an adequate, affordable policy before December 27, 2018, had UIG been more diligent and begun its search for replacement coverage earlier. The summary judgment record supports the opposite conclusion, even when viewed in the light most favorable to Yankee Pride. Aside from the assigned risk pool, UIG located only one other option for replacement coverage, and Sidelinger found the cost of that policy unacceptable, too. Yankee Pride has not identified an insurer that would have provided coverage at an acceptable cost had UIG started looking sooner.[4]

---

[4] Yankee Pride's expert witness testified at a deposition that UIG "might have gotten a different answer if [UIG] asked earlier" about replacement coverage but did not offer an opinion that went

8

Sidelinger's own search was fruitless; the other agency he contacted in late December 2018 did not find any insurers willing to cover Yankee Pride until late January 2019.[5]

## C.   Negligence

[¶15]  The parties agreed that UIG had a duty "to use reasonable care, diligence and judgment in obtaining the insurance coverage requested by the insured party" consistent with the language used in *Szelenyi v. Morse, Payson & Noyes Ins.*, 594 A.2d 1092, 1094 (Me. 1991).[6]  Yankee Pride contends that UIG breached its duty to make timely efforts to find coverage by waiting until December 2018 to start its search.  Yankee Pride also argues that it should have been given more information about the assigned risk insurance policy.  Though there may be a genuine issue of material fact as to the timeliness of UIG's efforts, any claim for negligence fails for the same reason as the breach of contract claim:  there is no competent evidence establishing causation, i.e., that

---

beyond speculation.  *See Est. of Smith v. Salvesen*, 2016 ME 100, ¶ 21, 143 A.3d 780 ("Causation need not be proved directly but may be inferred if the inference flows logically from the facts *and is not unduly speculative.*" (emphasis added)).

[5]  That policy, issued by Acadia Insurance, does not alter the causation analysis because Acadia had declined to even offer a quote to Yankee Pride earlier in January, and ultimately issued a policy that limited coverage to a 200-mile operating radius.

[6]  The holding in *Szelenyi* and the duty explained above are founded upon the existence of an agency relationship between an insurance agent and the insured.  *Szelenyi v. Morse, Payson & Noyes Ins.*, 594 A.2d 1092, 1094 (Me. 1991).  *But see Sunset Enters.*, 556 A.2d at 215 (holding that an insurance agency is the agent of an insurance carrier and not of an insured party).

comparable insurance would have been available at an acceptable cost had UIG begun the search earlier.  *See Murdock v. Thorne*, 2017 ME 136, ¶ 11, 166 A.3d 119 (identifying duty, breach of duty, causation, and damages as the elements required to make a prima facie case for negligence).

**D.     Breach of Fiduciary Duty**

[¶16]   Finally, Yankee Pride also asserts a claim for breach of fiduciary duty.  "[T]he salient elements of a fiduciary relationship [are] '(1) the actual placing of trust or confidence in fact by one party in another, and (2) a great disparity of position and influence between the parties at issue.'"  *Stewart v. Machias Sav. Bank*, 2000 ME 207, ¶ 10, 762 A.2d 44 (quoting *Bryan R. v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 1999 ME 144, ¶ 19, 738 A.2d 839).  There is no evidence from which a fact finder could find that a fiduciary relationship existed between the parties here.  *See Noveletsky v. Metro. Life Ins. Co.*, No. 2:12-CV-00021-NT, 2013 U.S. Dist. LEXIS 83762, at *23-*27 (D. Me. June 14, 2013) (applying the two-part test to determine whether a fiduciary relationship exists between an insurance agent and an insured party).  And, in any event, the lack of competent evidence to establish causation is as fatal to the count for breach of fiduciary duty as it is to the counts discussed above.  *See Niehoff v. Shankman & Assocs. Legal Ctr., P.A.*, 2000 ME 214, ¶ 8, 763 A.2d

121 ("The same rules of causation generally apply whether the cause of action sounds in contract, negligence, or breach of fiduciary duty.").

## III. CONCLUSION

[¶17]  Yankee Pride's failure to offer competent evidence of causation precludes a prima facie showing on any of its claims, whether they sound in contract, tort, or breach of fiduciary duty.  The court did not err in granting summary judgment to UIG.

The entry is:

>Judgment affirmed.

---

Lee H. Bals, Esq. (orally), Marcus Clegg, Portland, for appellant Yankee Pride Transportation and Logistics, Inc.

Sigmund D. Schutz, Esq. (orally), and Alexandra A. Harriman, Esq., Preti Flaherty Beliveau & Pachios, LLP, Portland, for appellee UIG, Inc.

Business and Consumer Docket docket number CV-2019-24
FOR CLERK REFERENCE ONLY