STATE OF MAINE                              SUPERIOR COURT
AROOSTOOK, SS.                              Docket No. CARSC-CV-2020-158


Acuity Mutual Ins. Co.,                     )
                        Plaintiff,          )
                                            )
                                            )
            v.                              )        ORDER ON MOTION FOR
                                            )        SUMMARY JUDGMENT
Lajoie Electric & Control Service, Inc.     )
                        Defendants          )


 

This matter comes before the Court on the motion for summary judgment filed by

defendant Lajoie Electric & Control Service, Inc. ("Lajoie" or the "Defendant"). This case

relates to a loss due to fire at The White Dog Market in Presque Isle, Maine. The White

Dog Market was owned and operated by White Dog Market, LLC. Plaintiff Acuity

Mutual Insurance Company ("Acuity" or the "Plaintiff") is an insurance company that

succeeded to the rights of its insured and initiated this suit. Plaintiff alleged in its three-

count Complaint that (1) Lajoie was negligent in the performance of electrical work at

The White Dog Market, (2) Lajoie breached the contract to perform electrical work at The

White Dog Market, and (3) Lajoie breached the implied warranty of good workmanship

in the performance of electrical work at The White Dog Market. Lajoie seeks summary

judgment in its favor on all three counts.

## Standard of Review

The Court will grant a properly supported motion for summary judgment if "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case." *Lougee Conservancy v. City Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774. A genuine issue exists "when there is sufficient evidence for a fact-finder to choose between competing versions of the fact," *Id.* ¶ 11, "even if one party's version appears more credible or persuasive." *York Cty. v. PropertyInfo Corp.*, 2019 ME 12, ¶ 16, 200 A.3d 803.

The moving party has the initial burden of proving the absence of any genuine, material factual issues through a properly supported statement of material facts (S.M.F.) and of proving that the facts presented in that S.M.F., left uncontroverted, would entitle the moving party to judgment as a matter of law at trial. *See* M.R. Civ. P. 56(e); *Jennings v. Maclean*, 2015 ME 42, ¶ 5, 114 A.3d 667; *see also* 3 Harvey & Merritt, *Maine Civil Practice* § 56:6 at 242 (3d, 2018-2019 ed.) ("The initial burden under Rule 56 lies with the moving party to demonstrate clearly the absence of a genuine issue of material fact."). In determining whether the summary judgment record reveals a genuine dispute of material fact, the Court examines the facts, including any reasonable inferences that may be drawn therefrom, in the light most favorable to the nonmoving party. *See e.g., McCandless v. Ramsey*, 2019 ME 111, ¶ 11, 211 A.3d 1157; *Grant v. Foster Wheeler, LLC*, 2016 ME 85, ¶ 12, 140 A.3d 1242; *Maine Civil Practice* § 56:6 at 242. The question of whether the moving party has initially shown that he or she is entitled to judgment as a matter of law,

2

depends on whether the moving party bears the ultimate burden of proof on the particular claim or defense at issue on the motion.

The Defendant has moved for summary judgment on the grounds that Plaintiff is unable to prove all of the elements of its claims. Plaintiff would bear the ultimate burden of proving the elements of its claims. To meet its initial burden as the moving party, Defendant must show either that its S.M.F. presents certain facts that would refute an essential element of Plaintiff's claims, or which indicate that Plaintiff is unable to muster the necessary evidence to set forth a prima facie case. *See Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194-97 (5th Cir. 1986); *see also Waugh v. Genesis Healthcare LLC*, 2019 ME 179, ¶ 9, 222 A.3d 1063 (a defendant moving for summary judgment bears the initial burden of establishing that no genuine dispute of material fact exists and that undisputed facts entitle it to a judgment as a matter of law); M.R. Civ. P. 56(e)-(h). If the Defendant satisfies this burden, the Plaintiff must respond by producing the evidence necessary to "establish a prima facie case for each element of [its] cause of action." *Lougee Conservancy*, 2012 ME 103, ¶ 12, 48 A.3d 774. This standard requires only that the Plaintiff produce "enough evidence to allow the [trier-of-fact] to infer the fact at issue and rule in the party's favor." *Id.* If the Plaintiff fail to satisfy this burden as to any essential element of her cause of action, the Defendant is entitled to summary judgment on that claim. *Id.* ¶ 12; M.R. Civ. P. 56(e).

When a motion for summary judgment is made and supported as provided in Rule 56, "an adverse party may not rest upon the mere allegations or denials of that party's pleading but must respond by affidavits or as otherwise provided in [Rule 56] setting

3

forth specific facts showing that there is a genuine issue for trial." *M.R. Civ. P. 56(e)*. M.R. Civ. P. 56(h)(2) provides that a party who opposes a motion for summary judgment must "submit with its opposition a separate, short, and concise opposing statement." In this opposing statement of material facts (Opp. S.M.F.) the nonmoving party must make statements that "admit, deny, or qualify" each item of the moving party's S.M.F, beginning each statement with the designation "Admitted," "Denied," or "Qualified." If the nonmoving party chooses to "deny" or "qualify" an assertion in the S.M.F., the party must support each denial or qualification with a specific citation to evidentiary material that supports the assertion. The nonmoving party's Opp. S.M.F. may also include objections to factual assertions in the moving party's S.M.F., with a brief statement of the basis for the objection. The nonmoving party may also choose to submit a separate statement with any additional facts (S.A.F.), set forth in separate numbered paragraphs and supported by proper record citations, which the party contends raise a disputed issue for trial. The court "need not consider any additional facts when, . . ., they are improperly commingled in the nonmoving party's paragraphs responding to the moving party's material facts, . . ., and are not set forth in a separate section of additional facts organized in separate numbered paragraphs added pursuant to Rule 56(h)(2)." *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 11, 824 A.2d 48. The moving party's S.M.F. and the nonmoving party's Opp. S.M.F. and S.A.F. should be limited to factual matters and are not spaces for the parties to engage in legal arguments with each other on the merits of the issues. *See e.g., Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, ¶ 4 n.2, 133 A.3d

4

1021. If the moving party's properly presented assertions are not controverted by proper record citations, they are deemed admitted. M.R.Civ.P. 56(h)(4).

## Factual Background

The following facts are not in dispute. Matthew Irwin, a co-owner of White Dog Market, LLC, hired Defendant to install two new electrical receptacles for use by fryolators in the deli area of the kitchen at the White Dog Market, which work was performed by Defendant's employee, Taylor Sutherland, on April 21, 2022 while Irwin was present in the store. *S.M.F. 3; S.M.F. 12.* In order to connect the two new receptacles to the existing electrical system, Mr. Sutherland accessed the main electrical panel in the basement of the White Dog Market by opening the door and unscrewing the panel cover with a screwdriver. *S.M.F. 13.* Because the two new General Electric two-pole breakers needed to energize the two new fryolator receptacles took up space previously occupied by two of the existing GE single-pole breakers, and the panel was full, Mr. Sutherland needed to substitute two tandem breakers (sometimes referred to as "split" breakers). *S.M.F. 15.* Because General Electric did not sell tandem breakers, Mr. Sutherland installed two Eaton BR2020 tandem breakers. *S.M.F. 16.* Although the two Eaton BR2020 tandem breakers were not classified or listed by General Electric for use in a General Electric panel, Mr. Sutherland had successfully utilized Eaton tandem breakers in multiple General Electric panels in the past without any problems or issues with either installation or function. *S.M.F. 17.* The width of the slot within the GE panel into which the breaker was to be inserted was .934 and the width of unclassified Eaton tandem breaker was .936, a difference of .002 (two thousandths of an inch). *S.M.F. 36.* Electricians may only use

5

breakers classified for use in a panel. *S.A.F. 14.* The use of unclassified breakers in a panel is a violation of the National Electrical Code. *S.A.F. 16.* The Presque Isle ordinance required a permit for the work performed by LaJoie, but LaJoie failed to get a permit for the work. *S.A.F. 44.* All of the work performed by Mr. Sutherland on April 21, 2020 was performed while the panel was energized and at no time did Mr. Sutherland observe any sign of overheating or other malfunction within the panel. *S.M.F. 20.* After completing the work on April 21, 2020, Mr. Sutherland was able to reinstall the cover to the main panel, which indicated to him that all breakers within it were fully inserted. *S.M.F. 14.*

On May 2, 2020, a fire originating within the main electrical panel of the White Dog Market in Presque Isle, Maine caused damage to the building and contents. *S.M.F. 1.* After the two new receptacles were installed by Mr. Sutherland on April 21, 2020, no appliances were ever plugged into them before the fire occurring on May 2, 2020 and they were not under load. *S.M.F. 4.* The fault in the panel that gave rise to the fire was in a location where there was no physical damage observed prior to the work performed by Mr. Sutherland. S.A.F. 37. After Mr. Sutherland was finished with the work performed on April 21, 2020, nine days before the fire, the cover of the panel was screwed back onto the panel by Mr. Sutherland and the panel was then a "closed box." *S.A.F. 42.* There is no evidence that the panel was ever opened again after Mr. Sutherland screwed the cover back onto it. *S.A.F. 43.* The left and right side breakers were damaged by fire. *S.A.F. 49.*

What is in dispute is whether Mr. Sutherland used a tool to remove and install the breakers. See, *S.M.F. 21; S.A.F. 23.* There is also a dispute as to what amount of force was used by Mr. Sutherland to install the new breakers and whether there was jostling of any

6

breakers adjacent to the new breakers. *See, S.M.F. 21, 22, 24; S.A.F. 2, 3, 4, 5, 8.* The experts designated by each party have arrived at differing opinions as to the cause and location of the point of origination for the fire. *See. S.M.F. 45; S.A.F. 35.*

## Discussion

As noted above, Plaintiff has asserted three separate claims against the Defendant. In Count 1, Plaintiff alleges negligence on the part of the Defendant in performance of its work on the electrical panel at The White Dog Market. A prima facie case of negligence requires a plaintiff to establish four elements, characterized as follows: "a duty owed, breach of that duty, and an injury to the plaintiff that is proximately caused by a breach of that duty." *Mastriano v. Blyer*, 779 A.2d 951, 954, 2001 Me. LEXIS 135 (*Quoting, Stanton v. Univ. of Maine Sys.*, 2001 ME 96, P 7, 773 A.2d 1045, 1049). There is no dispute that by undertaking the tasks assigned, Defendant owed Plaintiff a duty. There is an acknowledgment that the work involved a deviation from the National Electrical Code and a failure to obtain a proper permit. Clearly, Plaintiff suffered an injury due to the fire. What is in dispute is whether that injury was proximately caused by the breach of the duty.

In Count 2, Plaintiff alleges that Defendant breached its contract with Plaintiff by failing to perform the electrical work in a skillful manner. "To obtain relief for a breach of contract, the plaintiff must 'demonstrate that the defendant breached a material term of the contract, and that the breach caused the plaintiff to suffer damages." *Wuestenberg v. Rancourt*, 2020 ME 25, P17, 226 A.3d 227, 232 (*Quoting, Tobin v. Barter*, 2014 ME 51, ¶ 10, 89 A.3d 1088). Although there was no written contract and this case involved work to be

7

done on a time and material basis, Defendant concedes that Maine law recognizes an implied duty to perform work in a skillful, diligent and workmanlike manner. *Cannan v. Bob Chambers Ford,* 432 A.2d 387, 388(Me. 1981); *S.M.F. 55.* There is no dispute that there was a contract between Plaintiff and Defendant. Defendant appears to concede that there is a least a genuine issue of material fact related to the alleged breach of the duty to perform the work in a workmanlike manner. Again, the issue is whether the injury suffered was caused by any such breach.

In Count 3, Plaintiff alleges that the Defendant breached an implied warrant of good workmanship. The implied warranty of workmanlike performance requires only that work be performed in a "reasonably skillful and workmanlike manner. The test is one of reasonableness, not perfection, the standard being, ordinarily, the quality of work that would be done by a worker of average skill and intelligence." *Wimmer v. Down East Properties, Inc.,* 406 A.2d 88, 93(Me.1979)(*Citing, Shiffers v. Cunningham Shepherd Builders Co.,* 28 Colo.App. 29, 470 P.2d 593 (1970); *Waggoner v. Midwestern Development, Inc.,* 83 S.D. 57, 154 N.W.2d 803 (1967)). It must be shown that the failure to so perform proximately caused the damage suffered by a plaintiff. The parties did not address the issue of the alleged breach of the duty and instead focused on the issue of proximate cause.

As the parties' focus in the motion and objection relate to the causation issues regarding all three of Plaintiff's asserted claims, the court's further analysis will also focus solely on the issues raised related to causation.

8

## Causation

Looking at the totality of the surrounding circumstances, the Court notes that there is little overall factual dispute. However, there is substantial dispute regarding the material facts related to the narrow issue of causation. Since at the crux of this case involves the work done by a professional electrician and issues related to electrical engineering, matters "not sufficiently obvious as to be within common knowledge," Plaintiff must put forth competent expert testimony to support the claims. *Seven Tree Manor v. Kallberg*, 1997 ME 10, ¶6, 688 A.2d 916, 917. The admissibility of proffered expert testimony is dependent upon the proponent establishing (1) that the testimony is relevant and (2) that it will assist the trier of fact in understanding the evidence or determining a fact in issue. *State v. Williams*, 388 A.2d 500 (Me. 1978). The testimony must also meet a threshold of reliability. *See, Tolliver v. Department of Transportation*, 2008 ME 83, ¶29, 948 A.2d 1223, 1233.

There is no dispute that, in terms of training and experience, the experts retained by both parties are sufficiently qualified in their respective field. *Motion at 3* ("Plaintiff and Defendant each retained forensic engineering experts subsequent to the fire who participated in a joint scene investigation as well as multiple post-fire examinations of certain components removed from the fire scene"); *S.M.F. 32* (Plaintiff's designated expert has sixteen years of forensic work relating to determining the cause of electrical fires). Much of the criticism lodged against the opponent's designated expert relates to the weight of any opinion as opposed to admissibility of the proffered testimony. In light of the work performed, tests conducted on an exemplar panel, and the training and

experience of Plaintiff's designated expert, the court finds the proffered testimony to be relevant. The testimony may assist the trier of fact in understanding the evidence or determined a fact in issue. The court further finds the proffered testimony to satisfy the threshold of reliability for admissibility.

"Causation need not be proved directly but may be inferred if the inference flows logically from the facts and is not unduly speculative." *Estate of Smith v. Salvesen*, 2016 ME 100, ¶21, 143 A.3d 780. "If, however, there is so little evidence tending to show that the defendant's acts or omissions were the proximate cause of the plaintiff's injuries that the jury would have to engage in conjecture or speculation in order to return a verdict for the plaintiff, then the defendant is entitled to summary judgment." *Id.* The Law Court has noted that the evidence of factual elements offered to prove a claimed tort need not even be persuasive at the summary judgment stage, but "the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Estate of Smith v. Cumberland County*, 2013 ME 13, P19, 60 A.3d 759, 763 (Citations omitted).

The Plaintiff's expert's exemplar testing revealed that the use of the inappropriate breakers caused instability and could result in damage to the breakers or panel itself. Further, the oversized breakers could cause adjacent breakers to dislodge. Plaintiff's expert specifically observed damage to a breaker in his testing, along with deformation of insulation. The activities of Mr. Sutherland while working in the panel and the subsequent events are such that causation may be inferred, as the inference flows logically from the facts and is not unduly speculative. The fact that Defendant's expert conducted testing and arrived at differing conclusion merely highlights that there are

10

genuine issues of material fact in dispute. This case may very well be decided through a battle of the experts.

## Conclusion

Accordingly, Lajoie's Motion for Summary Judgment is hereby DENIED. This matter shall proceed to trial management conference and trial thereafter. It is so Ordered.

The Clerk is directed to incorporate this Order upon the docket by reference in accordance with M.R. Civ. P. 79(a).

Dated: 5/22/2023

_____
Justice, Maine Superior Court

ENTERED ON THE DOCKET 5/24/23